STATE OF NORTH CAROLINA v. DONALD AMBROSE MILLER

No. COA00-13

(Filed 20 March 2001)

**1. Evidence— prior convictions—driving while impaired— reckless driving—malice**

The trial court did not err in a prosecution for second-degree murder arising from defendant's impaired driving by admitting defendant's prior convictions for driving while impaired and careless and reckless driving to establish that defendant acted with malice.

**2. Homicide— second-degree murder—driving while impaired—sufficiency of evidence**

The trial court properly denied defendant's motion to dismiss a charge of second-degree murder arising from driving while impaired for lack of sufficient evidence where defendant had prior convictions, was swerving prior to the accident, and had a blood alcohol level far beyond the legal limit four hours after the accident.

**3. Homicide— second-degree murder—driving while impaired—instruction—malice**

The trial court did not err when instructing the jury on malice in a second-degree murder prosecution arising from driving while impaired. Although defendant contended that the court erred by not stating that the act must be performed intentionally, the court gave an instruction expressly approved in State v. Rich, 351 N.C. 386.

**4. Evidence— effect of towing on tires—testimony of Trooper**

The trial court did not err in a prosecution for second-degree murder arising from driving while impaired by allowing a Trooper

to testify as to what happens to a vehicle tire when it is towed from an accident scene after the court refused to allow the Trooper to testify as an expert. The testimony was a statement of fact derived from the Trooper's observation as to the condition of vehicle tires following an accident and was rationally based on his perception gained through experience as a State Highway Patrolman. Moreover, the State introduced ample evidence of skid marks and gouges in the road to support its theory of how the collision occurred.

**5. Witnesses— not allowed to testify—suspicion of perjury**

The trial court did not err in a prosecution for second-degree murder by not allowing a witness, Dillahunt, to testify on defendant's behalf where defense counsel did not include Dillahunt on his pretrial list of witnesses because he believed that Dillahunt would perjure himself and expressed these reservations to the trial court. Defendant failed to show that the trial court's denial of his motion to amend the witness list could not have been the result of a reasoned decision.

**6. Constitutional Law— effective assistance of counsel—witness not on pretrial list—suspicion of perjury**

The decision of defense counsel not to include a witness on the pretrial witness list did not constitute ineffective assistance of counsel where defense counsel made a strategic decision and, more importantly, believed that the witness would perjure himself. The Rules of Professional Conduct prohibited counsel from offering evidence which he knew or reasonably believed to be false.

**7. Sentencing— second-degree murder—aggravating factors**

The trial court did not err in a sentencing hearing for second-degree murder arising from impaired driving by finding in aggravation that defendant had knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person and that he had refused to participate in the proceedings by fleeing the courthouse after his conviction.

**8. Sentencing— flight by defendant—no good cause for continuance**

The trial court did not err by conducting a sentencing hearing for second-degree murder after defendant fled the courthouse

where the court suspended proceedings for several minutes while a sheriff searched for defendant, the bailiff informed the court that defendant's car was missing from the parking lot, and defense counsel responded affirmatively when asked if he was ready for the jury to return with the verdict. The record does not reflect a request by defense counsel to continue defendant's sentencing and, in any event, defendant's flight and refusal to participate does not constitute good cause.

Appeal by defendant from judgment entered 12 August 1999 by Judge James R. Vosburgh in Duplin County Superior Court. Heard in the Court of Appeals 15 February 2001.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Isaac T. Avery, III, and Assistant Attorney General Patricia A. Duffy, for the State.*

*Edward G. Bailey, for defendant-appellant.*

TYSON, Judge.

Defendant, Donald Ambrose Miller ("defendant"), appeals the trial court's entry of judgment imposing an active prison term of 248 months minimum and 307 months maximum, following his conviction for second-degree murder. We find no prejudicial error in defendant's trial or sentencing.

Facts

Defendant was driving a single car-carrier truck on Highway 41 on 12 September 1998. Defendant was traveling toward Potter's Hill, North Carolina, hauling a single car on the back of his truck. Seventeen year-old Jonathan Holmes ("Holmes") was also driving on Highway 41 at the same time. Holmes was driving a 1989 Chevrolet Camaro near his family's home in Potter's Hill.

In the early afternoon, Holmes' brother, who was at the Holmes' house, heard a loud crash. Holmes' parents and three siblings rushed outside to discover Holmes pinned inside his Camaro. The Camaro had been crushed in a collision with defendant's truck. Holmes died that afternoon from injuries sustained in the crash.

The physical evidence presented at trial was consistent with a head-on collision between Holmes and defendant in the southbound lane of Highway 41. Defendant's truck landed upside down on the

same side of the road as the Camaro. The car which defendant had been transporting was sitting in the middle of the road on its wheels near the other vehicles.

Rebbeca Galloway, a registered nurse trained in trauma treatment, was one of the first individuals to arrive on the accident scene. She testified at trial that she noticed "excessive numbers of beer cans scattered along the side of the road all around [defendant's] . . . vehicle" upon her arrival. Ms. Galloway witnessed defendant crawling out of the window of his truck. She testified that defendant "smell[ed] of alcohol," and that it was difficult to assess his injuries because he was "belligerent" and "combative." Ms. Galloway testified that defendant was preoccupied with having lost his "bottle." Defendant insisted that he "wanted a cigarette," despite Ms. Galloway's warnings that the smell of gasoline permeated the air and a fire could result. Ms. Galloway asked defendant if he was drunk. He responded, "Yeah, I believe I am."

The State also presented the testimony of Connie Williams. Ms. Williams testified that she was traveling on Highway 41 around 1:00 p.m. on the day of the accident. She testified that she looked up and saw the front of a car-carrying truck, such as defendant's, coming directly at her in her lane of travel. Ms. Williams had to veer off of the road to avoid colliding with the truck. Within minutes, Ms. Williams stopped at a nearby store. She witnessed an individual frantically enter the store to call 911, stating that he had just happened upon the scene of a three-car collision.

Trooper Ricky Hooks of the North Carolina Highway Patrol questioned defendant at the hospital. Trooper Hooks testified that defendant was "combative," that his eyes were red and glassy, and that defendant smelled of alcohol. Defendant's blood tests, performed at 5:08 p.m. that afternoon, approximately four hours after the accident, revealed a blood alcohol concentration of 0.223. The State also introduced evidence that defendant had been convicted for careless and reckless driving in 1982, for driving under the influence in 1983, and for driving while impaired, and for careless and reckless driving in 1985.

Defendant moved to dismiss the charge of second-degree murder at the close of the State's evidence. The trial court denied the motion. Defendant presented no evidence. While the jury deliberated, defendant absconded from the courthouse. The trial court waited for his return to resume court, but defendant could not be located. The trial

court resumed proceedings, and the jury returned guilty verdicts on the charges of second-degree murder, driving while impaired, and careless and reckless driving.

The court found defendant to have a prior record Level III, and two factors in aggravation. The trial court sentenced defendant to a minimum active term of 248 months (20 years and 8 months) to a maximum of 307 months (25 years and 7 months). The trial court also ordered defendant to participate in a substance abuse treatment program. Defendant appeals.

## Issues

Defendant makes the following assignments of error: (1) the trial court erred in admitting evidence of defendant's prior driving-related convictions; (2) the trial court erred in denying defendant's motion to dismiss the second-degree murder charge for lack of sufficient evidence; (3) the trial court improperly instructed the jury on the malice element of second-degree murder; (4) the trial court erred in admitting testimony of Trooper Randy Tew, North Carolina Highway Patrol, as to what happens to vehicles towed from an accident scene; (5) the trial court erred in refusing to allow defense witness Benjamin Dillahunt to testify; and (6) the trial court erred in finding aggravating factors in sentencing in defendant's absence.

We hold that the trial court did not commit error for the reasons stated below.

## I. Introduction of prior convictions

[1] Defense counsel conceded in oral argument to this Court that defendant's assignment of error to the introduction of his prior convictions is without merit, in light of the Supreme Court's decision in *State v. Rich*, 351 N.C. 386, 527 S.E.2d 299 (2000). The State introduced evidence of defendant's 1982 conviction for careless and reckless driving, 1983 conviction for driving under the influence, and 1985 convictions for driving while impaired, and careless and reckless driving. The State offered the convictions to establish that defendant acted with the degree of malice necessary to establish second-degree murder.

Our Supreme Court has explicitly approved of the introduction of such evidence in order to establish malice or knowledge of the dangerousness of one's behavior. *See Rich*, 351 N.C. at 399, 527 S.E.2d at 306. In *Rich*, the defendant argued that his prior driving-related con-

victions, dating back to nine years prior, were irrelevant to the issue of malice at the time of the collision. *Id.* The defendant argued that introduction of such evidence violated Rule 404(b) of the Rules of Evidence, prohibiting introduction of other crimes "to prove the character of a person in order to show that he acted in conformity therewith." *Id.* (quoting N.C. Gen. Stat. § 8C-1, Rule 404(b) (1999)).

Writing for the Court, Justice Lake determined that the evidence of prior traffic convictions was offered for the permissible purpose of establishing the defendant's " 'totally depraved mind' " and " 'recklessness of the consequences' " on the night the defendant struck the victim's vehicle while traveling around a curve at a high rate of speed, and rejected defendant's argument. *Id.* at 400, 527 S.E.2d at 307. The Court held that, "[b]ecause the State offered the evidence to show that defendant knew and acted with a total disregard of the consequences, which is relevant to show malice, the provisions of Rule 404(b) were not violated." *Id.*

The Supreme Court recently upheld the principles enumerated in *Rich. See State v. Jones*, 353 N.C. 159, 538 S.E.2d 917 (2000). In *Jones*, evidence of the defendant's pending charge of driving while intoxicated was introduced to establish that the defendant acted with malice. *Id.* at 172, 538 S.E.2d at 928. The Supreme Court agreed with the State that such evidence demonstrated "that defendant was aware that his conduct leading up to the collision at issue here was reckless and inherently dangerous to human life. Thus, such evidence tended to show malice on the part of defendant and was properly admitted under Rule 404(b)." *Id.*

We reject the argument that defendant's convictions, dating back to 1982, were too remote in time to be relevant. *See Rich* (prior conviction dating back nine years admissible); *State v. McAllister*, 138 N.C. App. 252, 530 S.E.2d 859, *appeal dismissed*, 352 N.C. 681, —— S.E.2d —— (2000) (seven year-old conviction for driving while intoxicated admissible to establish malice); *State v. Grice*, 131 N.C. App. 48, 505 S.E.2d 166 (1998), *disc. review denied*, 350 N.C. 102, 533 S.E.2d 473 (1999) (prior convictions over ten years old admissible).

The above authority is controlling on this issue. Accordingly, we find no error in the trial court's introduction of defendant's prior crimes to establish that defendant acted with the malice necessary to convict him of second-degree murder. This assignment of error is overruled.

**STATE v. MILLER**

[142 N.C. App. 435 (2001)]

## II. Sufficiency of the evidence

**[2]** Defendant assigns error to the trial court's denial of his motion to dismiss the charge of second-degree murder for lack of sufficient evidence. Specifically, defendant argues that the State presented insufficient evidence of defendant's malice to support a conviction.

A trial court must deny a motion to dismiss for insufficient evidence where substantial evidence exists of each essential element of the crime charged. *McAllister*, 138 N.C. App. at 259-60, 530 S.E.2d at 864 (citing *State v. Vause*, 328 N.C. 231, 400 S.E.2d 57 (1991)). "[T]he trial court must view all of the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from the evidence." *Id.* at 259, 530 S.E.2d at 864 (citing *State v. Dick*, 126 N.C. App. 312, 317, 485 S.E.2d 88, 91, *disc. review denied*, 346 N.C. 551, 488 S.E.2d 813 (1997)).

The elements of second-degree murder are an unlawful killing of a human being with malice, but without premeditation and deliberation. *Rich*, 351 N.C. at 395, 527 S.E.2d at 304 (quoting *State v. Brewer*, 328 N.C. 515, 522, 402 S.E.2d 380, 385 (1991)). Our Supreme Court has determined that " '[i]ntent to kill is not a necessary element of second-degree murder, but there must be an intentional act sufficient to show malice.' " *Id.* (quoting *Brewer* at 522, 402 S.E.2d at 385). The State need only show "that defendant had the intent to perform the act of driving in such a reckless manner as reflects knowledge that injury or death would likely result, thus evidencing depravity of mind" to survive a motion to dismiss based on the absence of the element of malice. *Id.*; *see also, McAllister* at 260, 530 S.E.2d at 864.

In *Jones, supra*, our Supreme Court recently held that the State properly introduced evidence of defendant's prior driving convictions in order to establish malice. *Jones*, 353 N.C. at 173, 538 S.E.2d at 928. The Court held that such evidence demonstrates "that defendant was aware that his conduct leading up to the collision at issue here was reckless and inherently dangerous to human life." *Id.*

In this case, as in *Jones*, the State offered evidence of defendant's prior convictions to establish defendant's awareness that his behavior leading up to the accident was wrongful and inherently dangerous to human life. Our Supreme Court has expressly held that such evidence is sufficient to establish the malice element of second-degree murder. In addition, the State introduced evidence tending to show that defendant was swerving prior to the accident, and that his blood alco-

hol concentration was 0.223, far beyond the legal limit, four hours after the accident. This evidence, viewed in the light most favorable to the State, is sufficient to withstand a motion to dismiss. The trial court properly denied defendant's motion.

### III. Jury instruction on malice

[3] Defendant argues that the trial court erred in instructing the jury on the malice element of second-degree murder. The trial court instructed the jury that second-degree murder "is the unlawful killing of a human being with malice." The trial court explained the six required elements which the jury must find beyond a reasonable doubt to convict defendant of second-degree murder. On the fifth element of malice, the trial court instructed the jury as follows:

> There are three kinds of malice in our law of homicide. One kind of malice connotes a concept of express hatred, ill will or spite. This is called actual, expressed, or particular malice. Another kind of malice arises when an act which is inherently dangerous to human life is done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief and there is in addition a third kind of malice which is defined as nothing more than that condition of mind which prompts a person to take the life of another intentionally without just cause, excuse, or justification.

Defendant argues that the trial court erred in instructing the jury as to the second type of malice because it failed to express that the act must be performed intentionally. We disagree.

In *Rich*, the Supreme Court held that evidence is sufficient to support a second-degree murder charge where " 'an act which imports danger to another . . . is done so recklessly or wantonly as to manifest depravity of mind and disregard of human life.' " *Rich* at 395-96, 527 S.E.2d at 304 (quotation omitted). The Supreme Court upheld the trial court's instruction on malice:

> The jury's instructions clearly required a finding of malice sufficient to support second-degree murder if the jury concluded that defendant's actions were such as to be "inherently dangerous to human life [and were] done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief." Because the trial court's instructions to the jury on the element of malice required for second-degree murder were clear and correct, we

cannot conclude that the jury could have confused malice with culpable negligence.

*Id.* at 396, 527 S.E.2d at 304 (emphasis supplied).

In this case, the learned trial court gave an identical instruction on malice as the trial court in *Rich.* Our Supreme Court expressly approved of this instruction. This assignment of error is overruled.

### IV. Testimony of Officer Tew

[4] Defendant argues that the trial court erred in allowing Trooper Randy Tew to testify as to what happens to a vehicle tire when it is towed from an accident scene. The State attempted to offer Trooper Tew as an expert in accident reconstruction. The trial court refused to allow Trooper Tew to testify as an expert. The State pursued a line of questioning with Trooper Tew intended to elicit his knowledge of characteristics of tires following an accident and towing. The trial court sustained defendant's objections to several of the State's questions. However, Trooper Tew was permitted to testify as follows:

> When a vehicle is involved in a collision if there is no weight on the tire, often times the tire, although flat, will stay attached to the rim . . . . When the vehicle is overturned, that is, weight put on the tires, often times the tires and the wheel, although already flat, will appear to be coming off of the rim more of a fashion that it was prior to having weight put on it.

Defendant argues that Trooper Tew's testimony was opinion testimony improperly used "to show the lanes each vehicle was in prior to the accident: the ultimate fact in issue." We disagree.

Under Rule 701 of the Rules of Evidence, a lay witness may testify in the form of opinions or inferences which are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701 (1999).

Rule 701 encompasses statements that can be characterized as " 'shorthand statement[s] of fact.' " *State v. Braxton,* 352 N.C. 158, 531 S.E.2d 428, 445 (2000), *cert. denied, Braxton v. North Carolina,* 121 S. Ct. 890, —— L. Ed. 2d —— (2001) (citation omitted). A shorthand statement of fact encompasses a witness' conclusion " 'as to the appearance, condition, or mental or physical state of persons, animals, and things, derived from observation of a variety of facts

presented to the senses at one and the same time.' " *Id.* (quoting *State v. Spaulding*, 288 N.C. 397, 411, 219 S.E.2d 178, 187 (1975)).

Trooper Tew's testimony was rationally based on his perception gained through experience as a State Highway Patrolman. His testimony was a statement of fact derived from his observation as to the condition of vehicle tires following an accident. In addition, the State introduced ample evidence of skid marks and gouges in the road to support its theory about how the collision occurred. Defendant has failed to carry his burden of establishing that introduction of Trooper Tew's statements, if error, changed the outcome of his trial. *See State v. Workman*, 344 N.C. 482, 505, 476 S.E.2d 301, 314 (1996) (defendant carries burden of establishing prejudice by showing a reasonable possibility that if the testimony had not been received, a different result would have been reached); N.C. Gen. Stat. § 15A-1443(a). Defendant has failed to show any prejudice resulting from Trooper Tew's testimony.

## V. Testimony of Dillahunt

[5] Defendant assigns error to the trial court's refusal to allow Benjamin Dillahunt to testify on defendant's behalf. Defendant did not include Mr. Dillahunt on his pre-trial order list of witnesses. Defense counsel "had reservations concerning the believability of [Mr. Dillahunt]," despite knowledge of Mr. Dillahunt's alleged eyewitness testimony at the time he submitted the witness list. Counsel discussed with the trial court at length his belief that Mr. Dillahunt would perjure himself. Defendant requested that he be allowed to amend the witness list to include Mr. Dillahunt. The trial court denied the motion.

"Whether to admit evidence not listed in a pretrial order is entrusted to the discretion of the trial court . . . . The trial court's decision will not be reviewed unless an abuse of discretion is shown." *Beam v. Kerlee*, 120 N.C. App. 203, 214, 461 S.E.2d 911, 920 (1995), *cert. denied*, 342 N.C. 651, 467 S.E.2d 703 (1996) (citation omitted). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988) (citation omitted).

The record reveals that defense counsel knew of Mr. Dillahunt prior to submitting the pre-trial witness list. Counsel initially decided not to call Mr. Dillahunt due to serious reservations about his verac-

ity. Counsel expressed these reservations to the trial court. In light of these facts, defendant has failed to show that the trial court's denial of his motion to amend the witness list was "manifestly unsupported by reason" or "so arbitrary that it could not have been the result of a reasoned decision." *Hennis*, 323 at 285, 372 S.E.2d at 527.

**[6]** We also reject defendant's argument that his attorney's failure to include Mr. Dillahunt on the pre-trial witness list constituted ineffective assistance of counsel in violation of defendant's constitutional rights.

> In order to prevail on an ineffective assistance of counsel claim, defendant must satisfy a two-pronged test: first, he must show that his counsel's performance fell below an objective standard of reasonableness, *State v. Braswell*, 312 N.C. 553, 561-62, 324 S.E.2d 241, 248 (1985), and must demonstrate, second, that any error by counsel was so serious that there is a reasonable probability that the result of the trial would have been different absent the error. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, 693, reh'g denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984).

*State v. Campbell*, 142 N.C. App. ——, —— S.E.2d —— (No. COA00-83) (6 February 2001).

In *Campbell*, the defendant argued that he received ineffective assistance of counsel where his attorney failed to recall three witnesses whom counsel did not believe would help the defendant's case. *Id.* at ——, —— S.E.2d at ——. In rejecting the defendant's argument, we stated, "[i]t is obvious that defendant's counsel was making a reasoned strategy decision. Where the strategy of trial counsel is 'well within the range of professionally reasonable judgments,' the action of counsel is not constitutionally ineffective." *Id.* (quoting *Strickland*, 466 U.S. at 699, 80 L.Ed.2d at 701).

In the present case, defendant's attorney made a strategic decision by excluding Mr. Dillahunt from the witness list. More importantly, Rule 3.3 of the North Carolina Rules of Professional Conduct prohibited counsel from offering evidence which he knew to be false, or reasonably believed to be false. The transcript reveals that counsel excluded Mr. Dillahunt from the witness list because he believed Mr. Dillahunt would perjure himself. The decision to exclude Mr. Dillahunt from the witness list was thus " 'well within the range of professionally reasonable judgments.' " *See Campbell, supra.*

## VI. Aggravating factors

**[7]** Defendant assigns error to the trial court's finding factors in aggravation. Defendant further contends that the trial court erred in conducting the sentencing hearing in defendant's absence. The trial court aggravated defendant's sentence based on the statutory factor that defendant knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person. *See* N.C. Gen. Stat. § 15A-1340.16. The trial court also found the non-statutory aggravating factor that defendant refused to participate in the proceedings, and fled the courthouse while being a convicted felon subject to an active prison sentence.

"The weighing of factors in aggravation and mitigation is within the sound discretion of the sentencing court, and will not be disturbed upon appeal absent a showing of an abuse of discretion." *State v. Clifton*, 125 N.C. App. 471, 480, 481 S.E.2d 393, 399 (citation omitted). The trial court's findings in aggravation were supported by the evidence. Defendant has failed to show that either finding was an abuse of the sound discretion vested in the trial court. We reject this argument.

**[8]** We also reject defendant's argument that the trial court erred in conducting the sentencing hearing after defendant fled the courthouse. A trial court may continue a sentencing hearing upon a showing of good cause. *State v. McKenzie*, 122 N.C. App. 37, 48, 468 S.E.2d 817, 826 (1996) (citing N.C. Gen. Stat. § 15A-1334(a) (1988)). "Whether to allow a continuance of the sentencing hearing lies within the discretion of the trial judge." *Id.* (citation omitted).

In the present case, the trial court suspended proceedings for several minutes while a sheriff searched for defendant. The bailiff informed the trial court that defendant's car was missing from the parking lot. When the trial court asked defense counsel if he was ready for the jury to return with the verdict, counsel responded affirmatively. The record does not reflect that defense counsel ever requested that the trial court continue defendant's sentencing, or that he offered any evidence of good cause to support postponement. In any event, defendant's flight and refusal to participate in the proceedings despite being a convicted felon does not constitute "good cause." Defendant has failed to show an abuse of discretion.

Defendant received a trial free of prejudicial error.

**BREEDLOVE v. AEROTRIM, U.S.A., INC.**

[142 N.C. App. 447 (2001)]

No error.

Judges MARTIN and TIMMONS-GOODSON concur.