STATE OF NORTH CAROLINA v. BRYANT EDWARD WILLIAMS

No. COA00-582

(Filed 3 July 2001)

## 1. Constitutional Law— speedy trial—no prejudice

The trial court did not err by not dismissing a charge of first-degree murder on the ground that defendant's constitutional right to a speedy trial was violated where defendant was indicted on 25 August 1997 and tried on 28 June 1999; the district attorney made numerous requests for additional criminal terms of superior court; he tried three other capital cases during this time, each older than defendant's case; and there was no evidence that the delay impaired defendant's ability to prepare his defense.

## 2. Homicide— first-degree murder—insufficient evidence of premeditation—elements of second-degree murder necessarily found

A judgment for first-degree murder was vacated and the case was remanded for judgment and sentencing on second-degree murder where defendant and the victim knew each other before this altercation at a club; there was no evidence of animosity or that defendant had made threatening remarks to the victim; defendant was provoked by the victim's assault, to which defendant immediately retaliated by firing one shot resulting in the immediate cessation of the altercation after the victim fell; and defendant's actions before and after the shooting did not show planning or forethought. The conviction of first-degree murder must be reversed because of the absence of premeditation and deliberation, but the jury necessarily found all of the elements of second-degree murder in finding defendant guilty of first-degree murder.

Judge TYSON concurring in part and dissenting in part.

Appeal by defendant from judgment entered 9 July 1999 by Judge Thomas D. Haigwood in Halifax County Superior Court. Heard in the Court of Appeals 18 April 2001.

**STATE v. WILLIAMS**

[144 N.C. App. 526 (2001)]

*Attorney General Michael F. Easley, by Assistant Attorney General K.D. Sturgis, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Constance E. Widenhouse, for defendant-appellant.*

WALKER, Judge.

Defendant appeals his conviction of first degree murder on 9 July 1999. The State's evidence at trial tended to show the following: On 19 April 1997, the victim, Kenny Gregory (Gregory) attended a cookout with several friends including Sam Jackson (Jackson), Marvin Kee (Kee), Michelle Brooks Shearin (Shearin) and Tegra Turner (Turner). At approximately 11:00 p.m., the group went to the Fireside Disco in Littleton. While inside the club, Jackson, who had been drinking heavily, walked between a man and a woman who were dancing. An argument ensued which resulted in the house lights being turned on. However, the argument soon ended and the rest of the evening proceeded without incident until the club closed.

After the club closed, patrons began to leave. As Jackson, Shearin and Turner approached the door, Jackson saw the man with whom he had argued earlier. Jackson pursued the man outside the club and their argument soon turned into a fight. Another man known as June Man, who had been seen with defendant earlier that night, attempted to break up the fight and told Jackson to stop fighting. June Man and Jackson then began to fight and a crowd gathered to watch. Defendant and a man known as Conrad began to push people back in an attempt to allow the two to fight. After about fifteen or twenty minutes, Shearin and Turner saw Gregory and Kee walking from the club. Shearin called out to Gregory in an attempt to get him to break up the fight. As Gregory and Kee approached the scene, defendant pushed Gregory back with his hands and told him to allow a "one on one fight." Gregory then punched defendant in the jaw, causing him to stagger backwards several feet. Defendant produced a handgun and fired a shot which struck Gregory in the neck.

Kee testified that the series of events "didn't take no time. [Defendant] [j]ust pushed him, that's when [Gregory] hit him, like a chain reaction. He pushed him, he hit him, he shot him." Gregory's wound was fatal. Defendant fled the scene immediately after the shooting but turned himself in to the Halifax County Sheriff's Department the next day.

**[1]** We first address defendant's contention that the trial court erred in failing to dismiss the charges because his constitutional right to a speedy trial was violated.

Defendant was indicted for murder on 25 August 1997 and awaited trial for nearly two years while in custody before his case was brought to trial on 28 June 1999. During that time, he filed four motions for a speedy trial, all of which were heard and denied. On 22 June 1999, defendant filed a fifth motion, asking for dismissal of the charges due to the failure to grant a speedy trial. This motion was heard on 28 June 1999, the first day of trial. After hearing evidence, the trial court found, in pertinent part:

> 5. That this matter has been calendered for trial during six sessions of Halifax County Superior Court.

> 6. That the [d]efendant during none of those sessions of court or any other session of court has ever requested a continuance.

> 7. That since the defendant was indicted, there have been eighteen sessions of felony Superior Court, only thirteen of which were available for the trial of this matter.

> 8. That during the pendency of this matter three capital trials have taken place. Those trials consumed a total of thirty-three weeks.

> 9. That the Assistant District Attorney has announced that this matter is scheduled for trial to be held during the next session of Superior Court to be held on June 28, 1999.

On the basis of these findings, the trial court concluded:

> 1. That the delay in calling this matter for trial has not been unreasonable.

> 2. That the relief sought in the [d]efendant's motion for Speedy Trial is denied.

Furthermore, in denying defendant's motion, the trial court stated that "the evidence in the record amply shows that the dockets in this county are congested and that has, through no particular purpose directed towards this defendant, has [sic] resulted in the time that has gone by before this case has been called for trial." While the trial court acknowledged that the delay in bringing defendant's case to trial had been unusually long, it also concluded that there was a lack of "any purposeful intent or any arbitrary actions on the part of the

State that resulted in this delay, and certainly no evidence that the State was seeking any tactical advantage against this particular defendant by the delay."

In *State v. Lundy*, 135 N.C. App. 13, 519 S.E.2d 73 (1999), our Supreme Court set out the balancing test to be used when considering whether a defendant's constitutional right to a speedy trial has been violated. In applying the test, this Court must balance four factors: (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) whether the defendant has been prejudiced by the delay. *Lundy* at 19, 519 S.E.2d at 79. "The issue of whether a transgression of defendant's right to a speedy trial has occurred is not resolved by any one factor; 'rather, the factors must be examined as a whole, with such other circumstances as may be relevant.' " *Id.*

Here, the evidence reflects that the district attorney diligently worked throughout the time at issue to deal aggressively with an overflowing docket. The district attorney made numerous requests for additional criminal terms of superior court. He had tried three other capital cases during this time. Each of these three cases was older than defendant's case. Further, we find no infringement of defendant's rights has occurred because he has failed to show what he recognizes as the most important factor—prejudice due to the delay. There is an absence of evidence that the delay impaired defendant's ability to prepare his defense through the loss of evidence, fading of memories or any other risk inherent in a delayed trial. Thus, in accordance with the balancing test required by *Lundy*, we find defendant's constitutional right to a speedy trial has not been violated.

**[2]** Defendant next contends that the trial court erred in denying his motion to dismiss the charge of first degree murder because insufficient evidence existed to show he shot Gregory with a premeditated and deliberated intent to kill.

First degree murder consists of the unlawful killing of another with malice, premeditation and deliberation. *State v. Misenheimer*, 304 N.C. 108, 113, 282 S.E.2d 791, 795 (1981). " 'Premeditation' means that the defendant thought about killing for some length of time, however short, before he killed." *State v. Fields*, 315 N.C. 191, 200, 337 S.E.2d 518, 524 (1985). " 'Deliberation' means that the intent to kill was formulated in a 'cool state of blood', 'one not under the influence of a violent passion suddenly aroused by some lawful or just cause or

legal provocation.' " Id. "The phrase 'cool state of blood' means that the defendant's anger or emotion must not have been such as to overcome the defendant's reason." *State v. Elliott*, 344 N.C. 242, 475 S.E.2d 202 (1996). "Although there may have been time for deliberation, if the purpose to kill was [sic] formed and immediately executed in a passion, especially if the passion was aroused by a recent provocation or by mutual combat, the murder is not deliberate and premeditated." *Misenheimer* at 113, 282 S.E.2d at 795.

A non-exclusive list of factors to be considered in determining whether the defendant committed the crime after premeditation and deliberation are:

(1) want of provocation on the part of the deceased; (2) the conduct and statements of the defendant before and after the killing; (3) threats and declarations of the defendant before and during the course of the occurrence giving rise to the death of the deceased; (4) ill will or previous difficulty between the parties; (5) the dealing of lethal blows after the deceased has been felled and rendered helpless; and (6) evidence that the killing was done in a brutal manner.

*State v. Hamlet*, 312 N.C. 162, 170, 321 S.E.2d 837, 843 (1984). An examination of these factors reveals that insufficient evidence was presented to show that defendant acted with premeditation and deliberation.

In *State v. Corn*, 303 N.C. 293, 278 S.E.2d 221 (1981), the victim entered defendant's house in an intoxicated state, approached the couch and insulted defendant. Defendant asserted that the victim initiated a physical confrontation with him and attempted to hit him but was unsuccessful. Defendant then pulled a rifle from behind the cushion of his couch and shot the victim eight to ten times in the chest, killing him. After the shooting, defendant walked across the street and called the police. Defendant contended there was insufficient evidence of premeditation and deliberation to support his conviction of first degree murder. After considering the aforementioned factors, our Supreme Court agreed, stating "[t]here is no evidence that defendant acted in accordance with a fixed design or that he had sufficient time to weigh the consequences of his actions." *Corn* at 298, 278 S.E.2d at 224.

Similarly, in the case at bar there was no evidence that defendant and Gregory knew each other before the altercation at the club.

**STATE v. WILLIAMS**

[144 N.C. App. 526 (2001)]

There also was no evidence of animosity or that defendant had made threatening remarks to Gregory. Furthermore, the defendant was provoked by Gregory's assault to which defendant immediately retaliated by firing one shot resulting in the immediate cessation of the altercation after Gregory fell. Finally, defendant's actions before and after the shooting did not show planning or forethought on his part. After committing the crime in front of a crowd of bystanders, defendant left the scene immediately but turned himself in the next day. In light of these factors, the evidence fails to show that defendant acted in a "cool state of blood" or that he was "not under the influence of a violent passion" at the time of the shooting. Given the absence of the requisite premeditation and deliberation by defendant, his conviction of first degree murder must be reversed.

Although we determine that insufficient evidence exists to support the conviction of first degree murder, we conclude the evidence supported the crime of second degree murder. In *State v. Vance*, 328 N.C. 613, 403 S.E.2d 495 (1991), the trial court submitted possible verdicts finding the defendant guilty of second degree murder, guilty of the lesser included offense of involuntary manslaughter or not guilty. The jury convicted the defendant of second degree murder; however, the judgment for second degree murder was later vacated by our Supreme Court. Nevertheless, the Court found that by convicting the defendant of second degree murder, "the jury necessarily had to find the facts establishing the lesser included offense of involuntary manslaughter." *Id.* at 623, 403 S.E.2d at 502. Accordingly, the defendant's case was "remanded for judgment as upon a verdict of guilty of involuntary manslaughter." *Id. See also State v. Barnett*, 113 N.C. App. 69, 437 S.E.2d 711 (1993).

Here, the trial court submitted possible verdicts finding the defendant guilty of first degree murder, guilty of the lesser included offenses of second degree murder or voluntary manslaughter or not guilty. Second degree murder is a lesser included offense of first degree murder but without premeditation and deliberation. Thus, in finding defendant guilty of first degree murder, the jury necessarily found all the elements of second degree murder were met. Accordingly, we vacate the judgment for first degree murder and remand the case to the trial court for sentencing and entry of judgment finding defendant guilty of second degree murder.

After careful review, we find defendant's remaining assignment of error to be without merit.

Reversed and remanded.

Judge HUNTER concurs.

Judge TYSON concurs in part and dissents in part.

TYSON, Judge, concurring in part, dissenting in part.

## I. Speedy Trial

I concur with that portion of the majority opinion which holds that defendant failed to establish the prejudice necessary to show a violation of his right to a speedy trial. While length of delay is not alone determinative of whether a defendant has been deprived of this right, *State v. Grooms*, 353 N.C. 50, 62, 540 S.E.2d 713, 721 (2000) (delay of 3 years, 326 days held not to violate right to speedy trial absent showing of prejudice), post-accusation delay becomes presumptively prejudicial at approximately one year. *Id.* (citing *Doggett v. United States*, 505 U.S. 647, 120 L. Ed. 2d 520 (1992)). A year's delay triggers application of the balancing test set forth in the majority opinion, as enumerated in *Lundy* and *Grooms*.

I agree with the majority's holding that defendant failed to show facts to meet the fourth requirement from *Lundy*: that the delay was prejudicial. I note, however, that (1) the length of defendant's incarceration was presumptively prejudicial; (2) that the State's justification for the delay: (a) that three older capital trials had occurred during the pendency of this matter, and (b) that the district attorney requested additional sessions of court, and "that the dockets in this county are congested," and the trial court's findings that the delays were not "purposeful" or for "tactical advantage," should not affect defendant's own constitutional right to a speedy trial; and (3) that defendant properly and timely asserted his right to a speedy trial by never requesting a continuance and by filing five separate motions for a speedy trial during his incarceration.

## II. Reversal of Conviction for First-Degree Murder

I dissent from that portion of the majority opinion which holds "that insufficient evidence was presented to show that defendant acted with premeditation and deliberation" to sustain defendant's conviction for first-degree murder. The majority lists six non-exclusive factors from *State v. Hamlet*, 312 N.C. 162, 170, 321 S.E.2d 837, 843 (1984) which are to be considered in determining whether

defendant committed murder with premeditation and deliberation. I would find sufficient evidence in "(2) the conduct and statements of the defendant before and after the killing," and "(3) threats and declarations of the defendant before and during the course of the occurrence giving rise to the death of the deceased." *Id.*

Viewed in the light most favorable to the State, as required on such a motion to dismiss, *see State v. Miller*, —— N.C. App. ——, 543 S.E.2d 201 (2001), the evidence shows that defendant initiated the event when he stepped towards the victim, Gregory, pushed him back with his hands, and held Gregory to let Jackson and June Man continue fighting. After being pushed and held by defendant, Gregory struck defendant in the mouth. Defendant, without warning, then escalated the encounter by introducing a deadly weapon into the fist fight. Defendant pulled out a pistol, extended his arm, aimed at Gregory's head, and shot him. After the shooting, defendant did not attempt to assist Gregory himself, or call for assistance. *See State v. Hunt*, 330 N.C. 425, 428, 410 S.E.2d 478, 481 (1991). Rather, defendant fled the scene by jumping into the trunk of a vehicle. The vehicle then stopped at the end of the driveway to the Fireside Disco. Defendant exited the trunk of the vehicle, entered the driver's seat, and drove away from the scene.

After the murder, defendant was not at his residence when Sheriff's Captain Charles E. Ward went there, nor was defendant at Jack Clanton's residence where the vehicle was parked that defendant used to flee the scene. Only after the officer left word for defendant to go to the Sheriff's office did defendant turn himself in to authorities the following afternoon. Such actions before, during and after the murder are consistent with the jury's finding of premeditation and deliberation. *See Hunt* at 428, 410 S.E.2d at 481 (evidence supported finding of premeditation and deliberation where, during scuffle with the victim, the defendant took out his pistol, aimed, and shot the victim several times, after which the defendant "left the deceased to die without attempting to obtain assistance for the deceased.").

After hearing and considering *all* the evidence, and judging the credibility of the witnesses, the jury found the defendant guilty of first-degree murder. I would hold that defendant received a fair trial free from prejudicial error. Accordingly, I respectfully dissent from the majority's holding to reverse defendant's conviction of first-degree murder, and to remand this case for entry of a judgment for second-degree murder.