STATE OF NORTH CAROLINA v. LAMAR DAMEIAN BASS

No. COA07-604

(Filed 6 May 2008)

**1. Homicide— first-degree murder—premeditation and deliberation—evidence sufficient**

Defendant's statements and conduct before and after a shooting, ill will between the parties, and the nature and number of the victim's wounds provided sufficient evidence of premeditation and deliberation in a first-degree murder prosecution involving teenagers on a bus and in a shopping mall.

**2. Homicide— first-degree murder—no instruction on lesser offense—no plain error**

No instruction on second-degree murder was warranted, and there was no plain error in not giving that instruction, where defendant did not present evidence to negate the elements of first-degree murder. The victim's verbal reaction to defendant's comment about his sister does not negate those elements; moreover, defendant shot the victim in the back.

**3. Evidence— hearsay—other evidence to same effect**

There was no prejudice in a first-degree murder prosecution in the admission of a declarant's out-of-court hearsay statement. There was other competent testimony to same effect.

Appeal by defendant from judgment entered 25 January 2007 by Judge Henry W. Hight, Jr. in Durham County Superior Court. Heard in the Court of Appeals 28 November 2007.

*Attorney General Roy Cooper, by Assistant Attorney General C. Norman Young, Jr., for the State.*

*Paul F. Herzog, for defendant-appellant.*

CALABRIA, Judge.

Lamar Dameian Bass ("defendant") appeals from a judgment entered upon a jury verdict finding him guilty of first-degree murder. We find no prejudicial error.

At trial, the State presented evidence showing that several people boarded a bus in downtown Durham, North Carolina on 26 December 2005. Brittany Johnson ("Johnson"), then fifteen years old, was already seated when defendant boarded the bus then sat down at the back of the bus near Johnson. Lazarren Tyqwan McClean ("the victim"), his brother David Barnhill, Jr. ("Barnhill"), the victim's younger sister, Shenalda McClean ("Shenalda"), then fourteen years old, and some friends also boarded the bus. Shenalda and her friend sat in two empty seats at the front of the bus. Johnson testified the bus was packed and defendant said "there's some seats back here," and told the victim "as long as we separate you cool." Some of the girls on the bus knew Shenalda's brother and his friends and offered to give up their seats so the girls could sit on their laps. A boy who sat with defendant said "there ain't no room on the bus, you all are going to have to stand up." The victim sat near the middle of the bus in front of defendant and Johnson. The victim did not move to the back of the bus, but remained in his seat.

Johnson observed an imprint of a gun in the defendant's pants pocket and after defense counsel's objection was overruled by the trial court, Johnson testified she heard someone say "Lamar got that burner." (The word "burner" is slang for a gun.) An unidentified boy on the bus wearing a yellowish gold jacket ("boy with the gold jacket") and sitting next to the defendant said "my boy got

a gun." Johnson said defendant smiled and said "I'm not going to shoot nobody."

The bus arrived at Northgate Mall in Durham, and stopped at the bus stop closest to Hechts department store ("Hechts"). The victim and his companions exited the bus followed by defendant and his friends. Defendant remarked to his friends, "I'm going to have to snatch her up," referring to the victim's sister. The victim replied, "ain't nobody going to snatch my sister up." When Shenalda and the victim exited the bus, the boy with the gold jacket said "we['d] like to snatch the shorty in the white coat." (The word "shorty" is slang for a girl.) Shenalda was wearing a white coat. Defendant said, "yeah, we'd like to snatch the shorty in the white coat." The victim replied "you all ain't about [to] snatch the shorty in the white coat because that's my little sister."

Shenalda testified that the boy in the gold jacket replied "we was just playing." Shenalda stated the victim answered "if you're just playing then why would you say something like that . . . because stuff can get serious around here." Shenalda testified that "[defendant] and some other boys that [were] behind [the boy] in the yellowish gold[] coat . . . was saying[,] then what's popping. Popping meaning like what you want to do." The victim turned around and started walking to Northgate Mall when the shooting started.

Quinzell Williamson ("Williamson") testified he was also on the bus. After he exited and was walking to the mall, he was shot in the back. Williamson was taken to the hospital and treated for his injuries.

Johnson saw the victim run towards Hechts and defendant ran in the opposite direction around Hechts. Johnson did not see the gun or the shooting, but described what she saw and heard. She found the victim lying at the entrance to Hechts, saw blood running down his chest into his boxers and she heard him gasping for breath.

Barnhill testified some boys said they would "snatch" the "shorty in the white coat" and the victim said "you all ain't going to touch my sister." The victim turned around and started walking to the mall. Barnhill heard gunshots, ducked to the side, and saw his brother run in front of him. Barnhill saw the defendant pointing a gun behind his brother and shooting.

Dr. Deborah Radisch, an associate chief medical examiner, performed an autopsy on the victim and determined the cause of death

was a gunshot wound to "the left posterior chest or back." The defendant was charged with first-degree murder and assault with a deadly weapon inflicting serious injury.

The trial was held in Durham County Superior Court on 22 January 2007, before the Honorable Henry W. Hight, Jr. At the close of the State's evidence, defendant moved to dismiss for insufficient evidence. The trial court denied the motion. Defendant did not present any evidence at trial. At the close of all the evidence, defendant moved to dismiss for insufficient evidence and the trial court denied the motion.

On 25 January 2007, the jury returned a verdict finding defendant guilty of first-degree murder of the victim and not guilty of assault with a deadly weapon inflicting serious injury on Williamson. Defendant was sentenced to life imprisonment without parole in the North Carolina Department of Correction. Defendant appeals.

## I. Insufficient Evidence

[1] Defendant contends the trial court erred in denying his motion to dismiss at the close of all the evidence because the State failed to present sufficient evidence to support a charge of first-degree murder. We disagree.

The standard of review on a motion to dismiss for insufficient evidence is whether there is substantial evidence of each element of the offense charged and whether the defendant is the perpetrator. *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). Substantial evidence is relevant evidence a "reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). The reviewing court considers the evidence in the light most favorable to the State, giving the State every reasonable inference arising from the evidence. *Powell*, 299 N.C. at 99, 261 S.E.2d at 117.

"First degree murder consists of the unlawful killing of another with malice, premeditation and deliberation." *State v. Williams*, 144 N.C. App. 526, 529, 548 S.E.2d 802, 805 (2001) (citation omitted). "Premeditation means that the defendant thought about the killing for some length of time, however short, before he killed." *State v. Fields*, 315 N.C. 191, 200, 337 S.E.2d 518, 524 (1985) (internal quotations omitted). "Deliberation means that the intent to kill was formulated in a cool state of blood, one not under the influence of a violent

passion suddenly aroused by some lawful or just cause or legal provocation." *Id.* Cool state of blood means that the defendant's anger or emotion was not "such as to overcome the defendant's reason." *State v. Elliott,* 344 N.C. 242, 267, 475 S.E.2d 202, 212 (1996).

This Court in *State v. Williams,* outlined a "non-exclusive list of factors to be considered in determining whether the defendant committed the crime after premeditation and deliberation . . . ." *Williams,* 144 N.C. App. at 530, 548 S.E.2d at 805 (citing *State v. Hamlet,* 312 N.C. 162, 170, 321 S.E.2d 837, 843 (1984)). Those factors are: (1) lack of provocation on the part of the deceased; (2) the defendant's conduct and statements before and after the killing; (3) the defendant's threats and declarations before and during the course of the occurrence giving rise to the death of the deceased; (4) ill will or previous difficulty between the parties; (5) the dealing of lethal blows after the deceased was rendered helpless; and (6) evidence that the killing was done in a brutal manner. *Id.* The nature and number of the victim's wounds is also "a circumstance from which an inference of premeditation and deliberation can be drawn." *State v. Hunt,* 330 N.C. 425, 428, 410 S.E.2d 478, 481 (1991) (citing *State v. Bullard,* 312 N.C. 129, 161, 322 S.E.2d 370, 388 (1984)).

The defendant asserts this case is controlled by *State v. Corn,* 303 N.C. 293, 278 S.E.2d 221 (1981) and *State v. Williams,* 144 N.C. App. 526, 548 S.E.2d 802 (2001). In *Corn,* the defendant was lying on his sofa in his home, when the victim entered his home, sat beside him and began to argue with him. *Corn,* 303 N.C. at 295, 278 S.E.2d at 222. Defendant testified the victim grabbed him, began slinging him around, tried to hit him and accused him of being a homosexual. *Id.* Defendant pulled a .22 caliber rifle from a crack between the sofa cushion and the back of the sofa and shot the victim eight to ten times in the chest. *Id.* After the shooting, defendant called the police department and waited for law enforcement officers to arrive. *Id.* Defendant was convicted of first-degree murder and appealed, arguing lack of evidence to support premeditation and deliberation. *Id.,* 303 N.C. at 296, 278 S.E.2d at 223. The Supreme Court remanded the case for a new trial, noting that

[t]he shooting was a sudden event, apparently brought on by some provocation on the part of the deceased. The evidence is uncontroverted that [the victim] entered defendant's home in a highly intoxicated state, approached the sofa on which defendant was lying, and insulted defendant by a statement which

caused the defendant to reply "you son-of-a-bitch, don't accuse me of that."

*Id.*, 303 N.C. at 297-98, 278 S.E.2d 223-24.

In *Williams*, the victim was at a dance club when two patrons of the club started fighting. *Williams*, 144 N.C. App. at 527, 548 S.E.2d at 803. The fight ended and the club closed. *Id.* Soon thereafter, the patrons started fighting again and a crowd gathered outside the club to watch the fight. *Id.* Defendant and another man pushed people away to allow the two patrons to continue fighting. *Id.* Defendant pushed the victim back and "told him to allow a 'one on one fight.' ". *Id.* The victim punched the defendant in the jaw, defendant pulled a handgun and fired a shot which hit the victim in the neck and killed him. *Id.*, 144 N.C. App. at 527, 548 S.E.2d at 804. Although defendant left the scene, the next day he surrendered to the sheriff's department. *Id.* Defendant was convicted of first-degree murder and appealed. *Id.*, 144 N.C. App. at 526, 548 S.E.2d at 803. This Court held there was insufficient evidence to support premeditation and deliberation because there was no evidence the victim and defendant knew each other before the incident, defendant had not made threatening remarks to the victim, defendant was provoked by the victim's assault, the shooting occurred immediately after the victim's assault, and defendant turned himself in the next day. *Id.*, 144 N.C. App. at 530-31, 548 S.E.2d at 805.

In *State v. Hunt*, the Supreme Court held there was sufficient evidence to support premeditation and deliberation, 330 N.C. at 429, 410 S.E.2d at 481. In *Hunt*, the defendant and the victim (the "deceased") were on a hill near a canal looking for an eight-ball of cocaine hidden near a tree. *Id.*, 330 N.C. at 425-26, 410 S.E.2d at 479. After they were unable to locate the cocaine, the deceased became angry, called the defendant names and pushed him down the hill. *Id.* When the deceased started walking up the hill, the defendant took his pistol out of his pocket and shot the deceased three times. *Id.* There was evidence that the deceased's actions angered the defendant until "he formed the intention to kill the deceased and carried out this plan. The deceased was moving away from the defendant and there was sufficient time for the defendant to weigh the consequences of his act." *Id.*, 330 N.C. at 429, 410 S.E.2d at 481.

In the case *sub judice*, viewed in the light most favorable to the State, there is sufficient evidence to support the elements of premeditation and deliberation in the form of defendant's statements and

conduct before and after the killing, ill will between the parties, and the nature and number of the victim's wounds. *Hunt*, 330 N.C. at 428, 410 S.E.2d at 481.

Unlike the defendants in *Williams* and *Corn*, in the instant case there was sufficient time for the defendant to contemplate his actions. Johnson testified she saw the imprint of a gun in defendant's pocket on the bus, the defendant told Johnson he was not going to "shoot nobody." Shenalda testified another boy on the bus told her the defendant had a gun. Evidence was submitted that defendant told the victim "as long as we separate you cool." A rational juror could infer that the defendant's remark was a threat. Three witnesses testified that the defendant made a remark about "snatching" the victim's sister. The victim responded to the remark, then turned around and started walking to the mall. Barnhill and Shenalda testified the victim had his back turned away from the defendant when defendant started shooting. Defendant did not surrender to law enforcement but was arrested. In addition, evidence was presented that the victim was shot twice in the back of the chest and in the back left shoulder.

Contrary to the defendant's characterization that the victim "initiated a quarrel by confronting Lamar Bass and his friends," viewed in the light most favorable to the State, the victim's response to defendant's comment about "snatching" his sister, does not rise to the level of provocation such as the physical altercations that provoked the defendants in *Williams* and *Corn*. Furthermore, just as the defendant in *Hunt* shot the victim in the back, the victim here had his back turned when defendant fired his weapon, giving defendant adequate time to "weigh the consequences of his act." *Hunt*, 330 N.C. at 429, 410 S.E.2d at 481. We conclude no error.

II. Jury Instructions on Second-Degree Murder—Plain Error

[2] Defendant next contends the trial court's failure to instruct the jury on the charge of second-degree murder as a lesser included offense of first-degree murder was error. To the extent this error was not preserved, defendant asserts plain error. Defense counsel did not request an instruction from the trial court on the lesser included offense of second-degree murder, therefore we review this error under a plain error analysis. *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983).

Plain error is a fundamental error, so lacking in its elements that justice cannot be done. *State v. Murray*, 310 N.C. 541, 546, 313 S.E.2d

523, 527-28 (1984), *disapproved on other grounds by State v. White*, 322 N.C. 506, 369 S.E.2d 813 (1988) (citations and internal quotations omitted). Plain error amounts to a denial of a fundamental right of the accused such as denial of a fair trial or the error seriously impacted the fairness, integrity or public reputation of the judicial proceedings, or where "it can fairly be said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty." *Id.*

"[A] [d]efendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury to rationally find him guilty of the lesser offense and acquit him of the greater." *State v. Leazer*, 353 N.C. 234, 237, 539 S.E.2d 922, 924 (2000) (internal quotations omitted) (citing *Keeble v. United States*, 412 U.S. 205, 208, 36 L. Ed. 2d 844, 847 (1973)). "Where there is no evidence to negate [the elements of the crime charged] other than defendant's denial that he committed the offense, the trial judge should properly exclude from jury consideration the possibility of a conviction of [a lesser included offense.]" *State v. Reid*, 175 N.C. App. 613, 623, 625 S.E.2d 575, 584 (2006) (citations and internal quotations omitted); *see also State v. Locklear*, 331 N.C. 239, 247, 415 S.E.2d 726, 730 (1992) (where State's evidence supported each element of first-degree murder, no instruction on second-degree murder was warranted).

Defendant contends Shenalda's testimony establishes that the victim provoked the defendant. Shenalda testified that after the defendant said "yeah, we'd like to snatch the shorty in the white coat," the victim "threatened them like, you all ain't about to snatch the shorty in the white coat because that's my little sister." We disagree.

The victim's verbal response is unlike the provocation in *Williams* and *Corn*, where the victims in those cases reacted with physical violence. Furthermore, the witness' characterization of the event, "threatened them like," was not supported by any other evidence that the victim used violence or threatened violence in relation to his reactive statement regarding his sister. Given the encounter between the defendant and victim on the bus and defendant's comment to the victim "as long as we separate we cool," the victim's verbal reaction to defendant's comment about his sister does not negate the elements of premeditation and deliberation. In addition, defendant shot the victim after the victim had his back turned. "Premeditation means that the defendant thought about the killing for some length of time, however short, before he killed." *Fields*, 315 N.C. at 200, 337 S.E.2d at 524 (quotation and citation omitted).

Without evidence to negate the elements of first-degree murder, no instruction on second-degree murder was warranted.

Defendant also contends that the fact the jury took two days to deliberate and a juror's comment that "it took us a long time" to arrive at a verdict, "cries out" for a second-degree murder instruction. We disagree.

The standard of review is whether a jury could rationally find the defendant guilty of the lesser offense. *Leazer, supra.* We conclude that the evidence supports the elements of first-degree murder and the defendant did not present evidence to negate first-degree murder. Therefore, no instruction on second-degree murder is warranted. This assignment of error is overruled.

### III. Admissibility of Evidence

**[3]** Next defendant asserts the trial court committed prejudicial error by admitting over the defendant's hearsay objection, two statements that were out-of-court statements in violation of N.C. Gen. Stat. § 8C-1, Rules 802 & 803 and N.C. Gen. Stat. § 15A-1442(4)(c) (2007). We disagree.

The standard of review on admissibility of evidence is abuse of discretion. *State v. Wood,* 185 N.C. App. 227, 231-32, 647 S.E.2d 679, 684, *rev. denied by,* 361 N.C. 703, 655 S.E.2d 402 (2007) ("[O]n appeal, the standard of review of a trial court's decision to exclude or admit evidence is that of an abuse of discretion.") (citation and internal quotation omitted). "A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." *State v. Hayes,* 314 N.C. 460, 471, 334 S.E.2d 741, 747 (1985) (citation omitted).

Defendant asserts he properly objected to the admission of Johnson's testimony regarding a declarant's out-of-court statement and preserved this error for prejudicial error review. We agree. Defendant timely objected to the testimony, the trial court ruled on defendant's objection and defendant excepted from the trial court's ruling. N.C.R. App. P. Rule 10 (2007). We also note defendant properly objected to admission of Shenalda's testimony that a boy said on the bus, "my boy got a gun."

North Carolina Rules of Evidence 802 provides that "[h]earsay is not admissible except as provided by statute or by these rules." N.C.

Gen. Stat. § 8C-1, Rule 802. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801. The State does not contest that the statements in question are hearsay. Therefore, we examine whether the trial court abused its discretion in admitting the statements over defendant's objection.

N.C. Gen. Stat. § 8C-1, Rule 803(1) & (2) provide that

[t]he following are not excluded by the hearsay rule, even though the declarant is available as a witness: (1) Present Sense Impression.—A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter. (2) Excited Utterance.—A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

N.C. Gen. Stat. § 8C-1, Rule 803(1-2) (2007).

Defendant contends Johnson's testimony that she heard a boy on the bus say, "Lamar got that burner" and Shenalda's testimony that she heard an unknown declarant on the bus state, "my boy got a gun" while gesturing to the defendant, are inadmissible under either the present sense impression or under the excited utterance exceptions. In addition, defendant argues the record is devoid of evidence to support the admission of the hearsay statements.

Even if we assume that the State presented no evidence to support admission of the hearsay statements under either the present sense impression or excited utterance exceptions, and the admission of the hearsay statements was an abuse of discretion, we find no prejudicial error. N.C. Gen. Stat. § 15A-1442(4)(c). In this case, other evidence established that defendant was armed while on the bus. First, Johnson testified she saw an imprint of a gun in defendant's pocket while on the bus. Second, Johnson testified defendant told her, "I'm not going to shoot nobody." Defendant does not allege error in admitting this statement. Third, David Barnhill testified that after they exited the bus, he saw defendant point his weapon and shoot it in the direction of the victim. Since other testimony establishes the fact that defendant was armed, the admission of the hearsay statements did not prejudice the defendant.

No prejudicial error.

Judges HUNTER and STROUD concur.