STATE OF NORTH CAROLINA v. JAMES F. POPE, III

No. 556A88

(Filed 18 December 1992)

1. **Evidence and Witnesses §§ 631, 645 (NCI4th)— suppression hearing—transcript of hearing in another case—incorporation of prior findings in order**

   The trial court in a Durham County murder case did not err by considering the transcript of a suppression hearing in a Wake County murder case in ruling on defendant's motion to suppress and by incorporating the findings of fact in the Wake County order in its order denying defendant's motion to suppress where the motions in both cases involved the suppression of defendant's in-custody statements and a handgun found by police as a result of those statements; the issues and evidence in both cases were substantially the same except that in the Durham County case the State presented evidence that the handgun would have been inevitably discovered; the trial court made its own independent findings as to this additional issue; defendant was given the opportunity to present additional evidence in the Durham County hearing; and defendant was represented at the Durham County suppression hearing by counsel who was also present and cross-examined the State's witnesses in the Wake County hearing. Even if the trial court's actions were erroneous, any error was harmless beyond a reasonable doubt.

   **Am Jur 2d, Evidence §§ 425-427.**

2. **Evidence and Witnesses § 1255 (NCI4th)— custodial interrogation—invocation of right to counsel—further interrogation**

   When a defendant has invoked his Fifth Amendment right to counsel during custodial interrogation, an officer may not further interrogate the defendant about the crime for which defendant has been arrested or any other crime unless his attorney is present or the defendant himself initiates the interrogation.

   **Am Jur 2d, Evidence §§ 555-557.**

STATE v. POPE

[333 N.C. 106 (1992)]

What constitutes "custodial interrogation" within rule of Miranda v. Arizona requiring that suspect be informed of his federal constitutional rights before custodial interrogation. 31 ALR3d 565.

3. **Evidence and Witnesses § 1250 (NCI4th) — invocation of right to counsel — subsequent police-initiated interrogation — incriminating statements inadmissible**

Where defendant had invoked his right to counsel during custodial interrogation on two occasions, his subsequent inculpatory statements made without counsel as a result of interrogation initiated by the police were inadmissible in his trial for murder and armed robbery even though defendant waived his right to remain silent and to have an attorney present before making each inculpatory statement, and even though defendant's request for an attorney involved interrogation about a break-in during which a handgun used in the murder and robbery was stolen.

Am Jur 2d, Evidence § 556.

What constitutes assertion of right to counsel following Miranda warnings — state cases. 83 ALR4th 443.

4. **Searches and Seizures § 32 (NCI3d) — unlawful interrogation — discovery of handgun — inevitable discovery exception to exclusionary rule**

A handgun found by police as a result of an unlawful interrogation and the results of ballistic and fingerprint tests performed on it were admissible under the inevitable discovery exception to the exclusionary rule where the evidence showed that the defendant had placed the handgun under the seat of a truck owned by an acquaintance who dealt in used vehicles; a detective told the truck owner that he was looking for a handgun that the defendant may have used in a robbery and a murder and searched the owner's home for the weapon; the handgun was later found by the officers in the truck after defendant told them where it was located; the truck was sold before the commencement of defendant's trial; the truck owner testified that when he sold a vehicle he looked "in every crack and crevice" to make sure there was nothing of value left in the vehicle and that if he had found the handgun he would have delivered it to the officers; and the handgun thus would

have been inevitably discovered and made available to the officers if they had not discovered it through the interrogation of the defendant.

**Am Jur 2d, Evidence § 416.5.**

**What circumstances fall within "inevitable discovery" exception to rule precluding admission, in criminal case, of evidence obtained in violation of Federal Constitution. 81 ALR Fed 331.**

Justice FRYE concurring in part and dissenting in part.

Justice LAKE did not participate in the consideration or decision of this case.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Hight, J., at the 19 September 1988 Criminal Session of Superior Court, Durham County. Heard in the Supreme Court 14 October 1991.

The defendant was charged in Durham County with first degree murder and robbery with a dangerous weapon. He made a motion to suppress statements he made to police officers and to suppress from the evidence a .45 caliber handgun which the officers found as the result of their interrogation of the defendant. He also moved to suppress evidence of ballistic and fingerprint tests made on the handgun.

A hearing was held on the defendant's motion on 12 August 1988. The evidence showed that in addition to the charges in Durham County, the defendant had been indicted for another murder in Wake County. A suppression hearing involving the same matters had been held in Wake County at the 6 June 1988 criminal session of superior court. In addition to evidence taken at the Durham County hearing, the court considered the transcript of the Wake County hearing and adopted most of the findings of fact from the order on the hearing in Wake County.

The court found facts, including the facts adopted from the Wake County order, which are not in dispute. These facts were to the following effect. There was a break-in in July 1987 at the Spanish Trace Apartments in Raleigh at which a .45 caliber handgun was stolen. The police were suspicious that the defendant had committed the break-in, but they did not have enough evidence to arrest him at that time. On 30 August 1987, a Domino's Pizza

business in Durham was robbed. The operator was shot to death with a .45 caliber handgun. On 9 September 1987, the operator of the Wolfpack Buy Kwik in Raleigh was killed with a .45 caliber handgun.

On 16 September 1987, the defendant was arrested in Raleigh on warrants for felonious larceny and for failing to appear in court. One purpose of this arrest was for the Raleigh officers to question the defendant about the Raleigh and Durham homicides. Shortly after the arrest, the defendant was interrogated by two detectives with the City of Raleigh Police Department. He waived his rights under *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966), but did not make an incriminating statement.

On 17 September 1987, while the defendant was still in custody, he was interviewed by a detective of the Durham Police Department. The defendant told the detective that he did not want to answer any questions at that time, but he might be willing to make a statement after he had talked to a lawyer. On 18 September 1987, the defendant was charged with the Durham homicide. All charges then pending against the defendant in Wake County were dropped in order to facilitate the removal of the defendant to Durham County. The defendant was moved to the Durham County jail and Thomas H. Eagen, a member of the Durham County bar, was appointed to represent him. Mr. Eagen advised the defendant not to talk to any law enforcement officers unless Mr. Eagen was present. Mr. Eagen also advised the members of the Durham and Raleigh police departments, the district attorney in Durham, and the jail personnel of Durham and Wake Counties that he did not want any law enforcement officers to talk to the defendant.

The detectives of the City of Raleigh Police Department, on 2 October 1987, procured a warrant charging the defendant with the felonious breaking or entering of the Spanish Trace Apartments and the defendant was returned to the Wake County jail. When the defendant was returned to Wake County, a detective with the Raleigh Police Department interviewed him on 2 October 1987. The detective told the defendant he wanted to question him in regard to the break-in at the Spanish Trace Apartments. The defendant told the detective he did not want to talk about this incident until he had conferred with his attorney.

On 4 October 1987, Raleigh detectives again interviewed the defendant. One of the detectives warned the defendant of his con-

stitutional rights to remain silent and to be represented by an attorney. The defendant told the detectives that Mr. Eagen had advised him not to talk to any law enforcement officers without the presence of his attorney, but any decision to talk to them would be made by him, James Pope. The defendant was questioned for approximately four hours and he did not make an incriminating statement during that time.

On 5 October 1987, the defendant was again questioned by the detectives who told him they wanted to interview him in regard to the Spanish Trace break-ins. Andy Gay, a member of the Wake County bar, had been appointed on that day to represent the defendant on the Spanish Trace breaking or entering charges. On that day, Mr. Gay advised the defendant not to talk to the officers about anything. On 7 October 1987, Mr. Gay again told the defendant not to talk to any of the officers and told the defendant this was also the advice of Mr. Eagen.

On 8 October 1987, the Raleigh detectives again interviewed the defendant. He told them at that time that Mr. Gay had advised him not to talk to any officers, but said he would make his own decision as to whether to talk to them or not. The officers asked the defendant about the .45 caliber handgun that was taken from the Spanish Trace Apartments. The defendant told the detectives he knew they "had figured out" that he had taken the gun and that the gun was in a safe place. The detectives then asked the defendant if the pistol was used to kill the man at the Wolfpack Buy Kwik. The defendant then said, "I can imagine in my mind it was" and that the handgun would "tell the tale." The detectives told the defendant they would talk to him later.

On 10 October 1987, the Raleigh detectives again interviewed the defendant. He told the officers he would waive his constitutional rights to remain silent and to have an attorney present. He then told them where the handgun was located and made an inculpatory statement. The detectives found the gun at the place at which the defendant said he had put it.

On 11 October 1987, the officers interviewed the defendant who made another incriminating statement. On 12 October 1987, the defendant again made an inculpatory statement. On each occasion at which the defendant made an inculpatory statement, he was removed from the Wake County jail by the detectives with the City of Raleigh Police Department and carried to police head-

quarters for questioning before he made a statement. The defendant never requested the officers to come to the jail. On each of these occasions he was advised of his constitutional rights pursuant to *Miranda* and on each occasion he told the detectives that he would waive his rights to remain silent and to have an attorney present.

The court concluded that the defendant knowingly, voluntarily and understandingly waived his rights pursuant to *Miranda* and knowingly, voluntarily and understandingly told the detectives where the pistol was located and made inculpatory statements. It ordered that the pistol, the results of the tests performed on the handgun, and the statements be admitted into evidence.

The defendant was convicted of first degree murder and robbery with a firearm. The court imposed the death penalty on the murder conviction and arrested judgment on the robbery charge. The defendant appealed.

*Lacy H. Thornburg, Attorney General, by Debra C. Graves, Assistant Attorney General, for the State.*

*Thomas H. Eagen for defendant appellant.*

WEBB, Justice.

[1] By his first assignment of error, the defendant contends that the trial court erred by receiving into evidence the transcript of the suppression hearing conducted in the Wake County murder case, and by incorporating that court's order into its own order denying the defendant's motion to suppress. The defendant's objection to the trial court's procedure was overruled.

The Wake County motion was heard during the 6 June 1988 criminal session of superior court. The motion in this case was heard 12 August 1988. The issues in both cases, and the evidence presented thereon, were substantially the same except that in the present case the State presented evidence that the .45 caliber handgun would have been inevitably discovered. As to this additional issue, the trial court made its own independent findings. Although the trial court did read the transcript of the Wake County case and incorporate findings in that order into its own, the court allowed the defendant to call witnesses and to present additional evidence.

STATE v. POPE

[333 N.C. 106 (1992)]

The defendant contends that the trial court's procedure violates the hearsay rule. We find no error in the trial court's actions. The trial judge, having read the transcript from the first hearing, apparently concluded that the evidence before him was essentially the same as the evidence before the Wake County court and therefore adopted that court's findings as his own. Even if the trial court's actions were erroneous, any error was harmless beyond a reasonable doubt. The defendant concedes that the issues before the two courts were the same and does not suggest how he was prejudiced by the court's actions. The defendant was represented at the suppression hearing in this case by counsel who was also present at the Wake County hearing and who cross-examined the State's witnesses at the first hearing. The defendant was again given the opportunity to cross-examine the State's witnesses and to present evidence additional to the evidence presented in Wake County. We, therefore, overrule this assignment of error.

[2]    The defendant next assigns error to the admission into evidence of his incriminating statements. This assignment of error has merit. Although it seems clear that the defendant made the incriminating statements freely, voluntarily and understandingly after he had been fully advised of his rights, decisions of the United States Supreme Court require us to hold that the statements should have been excluded from the evidence. We base our decision on *Minnick v. Mississippi*, 498 U.S. 146, 112 L. Ed. 2d 489 (1990); *Arizona v. Roberson*, 486 U.S. 675, 100 L. Ed. 2d 704 (1988); and *Edwards v. Arizona*, 451 U.S. 477, 68 L. Ed. 2d 378 (1981). These cases establish a rule that when a defendant has invoked his Fifth Amendment right to be free from interrogation unless assisted by counsel, an officer may not initiate any further interrogation of the defendant. Even if the defendant has consulted an attorney, an officer may not further interrogate the defendant unless his attorney is present or the defendant himself initiates the interrogation. The rule prohibits interrogations in regard to crimes other than the crimes for which a defendant has been arrested. A violation of this rule requires that such incriminating statements be suppressed from the evidence.

This case is distinguishable from *McNeill v. Wisconsin*, --- U.S. ---, 115 L. Ed. 2d 158 (1991). In that case, the defendant invoked his Sixth Amendment right to counsel at a court appearance. An officer interrogated the defendant at a later time in regard to a separate crime and the Supreme Court of the United States

held the statements made by the defendant during this interrogation were admissible against him. The Supreme Court made a distinction between the invocation of a defendant's Sixth Amendment right to counsel and a Fifth Amendment right to counsel. The Sixth Amendment provides that all criminal defendants have the right to the assistance of counsel for their defenses. If a defendant invokes this right to counsel, officers may interrogate him in regard to other offenses. The Fifth Amendment has been interpreted by the United States Supreme Court to mean that a person has the right to counsel during a custodial interrogation by officers. When a Fifth Amendment right to counsel is invoked, officers may not initiate any interrogation of a person about the offense with which he has been charged or any other offense.

[3] In this case, there is no question that the defendant invoked his Fifth Amendment right to an attorney before he made an inculpatory statement. He did so on 17 September 1987 when he told the detective with the Durham Police Department that he did not want to answer any questions at that time, but he might be willing to make a statement after he had talked to a lawyer. He also did so on 2 October 1987 when he told a detective with the City of Raleigh Police Department that he did not want to talk about the incident until he had conferred with an attorney.

Under the rule of the above cases decided by the United States Supreme Court, the inculpatory statements made to the detectives should have been excluded from the evidence because they were made at a time when the defendant's attorney was not present. It makes no difference that the defendant may have requested an attorney in regard to questions in regard to charges involving a break-in at the Spanish Trace Apartments. When this request was made, the detectives could not initiate any interrogation in regard to any other crimes.

We cannot hold beyond a reasonable doubt that this error was harmless. N.C.G.S. § 15A-1443(b) (1988). For this error, there must be a new trial.

[4] The defendant also assigns error to the admission into evidence of the .45 caliber handgun that was found at the place the defendant told the detectives it was located, as well as evidence of ballistic and fingerprint analyses performed on the weapon. When evidence is obtained as the result of illegal police conduct, not only should that evidence be suppressed, but all evidence that is the "fruit"

of that unlawful conduct should be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441 (1963); *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 64 L. Ed. 319 (1920). The defendant contends the .45 caliber handgun was found as the result of an unlawful interrogation, so that it was error not to exclude from the evidence the handgun and the ballistic and fingerprint tests performed on it.

The State contends the pistol and the test results were properly admitted under the inevitable discovery exception to the exclusionary rule. We agree. The United States Supreme Court in *Nix v. Williams*, 467 U.S. 431, 81 L. Ed. 2d 377 (1984), held that evidence which would otherwise be excluded because it was illegally seized may be admitted into evidence if the State proves by a preponderance of the evidence that the evidence would have been inevitably discovered by the law enforcement officers if it had not been found as a result of the illegal action. This Court held to the same effect in *State v. Garner*, 331 N.C. 491, 417 S.E.2d 502 (1992).

The State made a motion prior to trial that the court determine whether the handgun would have been discovered inevitably if the defendant had not told the officers where it was located. This motion was made so that in the event the interrogation of the defendant was at some time held to be unlawful, there would be an alternative rule under which this evidence could be admitted.

A hearing was held on this motion. The evidence at this hearing showed that the defendant had placed the handgun under the seat on the driver's side of a 1953 model Ford truck owned by Alan Eastridge, which was sitting on blocks in the yard of Mr. Eastridge. Mr. Eastridge was unaware that the pistol was in the truck. When the defendant was arrested he had in his possession bank checks issued to Mr. Eastridge. A detective went to the home of Mr. Eastridge and told him he was looking for a handgun that the defendant may have used in a robbery and a murder. Mr. Eastridge had known the defendant for several years and on 12 September 1987, Mr. Eastridge saw the defendant walk from the back of Mr. Eastridge's house. Mr. Eastridge gave the detective permission to search the premises but the handgun was not found. Mr. Eastridge searched his home, but did not find the handgun. Mr. Eastridge was not at home when the handgun was recovered by the detectives. The truck was sold in January or February of 1988. Mr. Eastridge testified that "[w]hen I sell something, I

**STATE v. POPE**

[333 N.C. 106 (1992)]

look in every crack and crevice of the truck—car or anything—to make sure there's nothing valuable in there or anything left, or even change. I just look, you know, just look good in one." He also testified that if he had found the handgun, he would have delivered it to the detectives.

The court made findings of fact consistent with the evidence including a finding that had the officers not found the handgun, Mr. Eastridge would have found it and given it to the officers. The court concluded that the handgun would have been inevitably discovered and been made available to the detectives if they had not discovered it through the interrogation of the defendant. It ordered that this evidence be admitted at trial.

Mr. Eastridge, who dealt in used automobiles, testified that when he sold a vehicle he looked "in every crack and crevice" to make sure there was nothing of value left in the vehicle. If Mr. Eastridge were speaking the truth, and the court could find by the preponderance of the evidence that he was, it could find the discovery of the handgun could not have been avoided if the handgun had remained under the seat of the truck until the sale of the truck was consummated. The handgun remained in place for several weeks after the defendant put it there until it was recovered by the detectives. The court could find by the preponderance of the evidence that the handgun would have remained in place until found by Mr. Eastridge. The truck was sold before the trial of the defendant commenced so that the handgun and the results of the tests performed upon it would have been available to the State without the discovery of the handgun as a result of the interrogation. This evidence was properly admitted under the inevitable discovery exception to the exclusionary rule.

We do not discuss the defendant's other assignments of error, as the questions they raise may not recur at a new trial.

NEW TRIAL.

Justice Lake did not participate in the consideration or decision of this case.

Justice FRYE concurring in part, dissenting in part.

I concur in the majority's conclusion that defendant is entitled to a new trial. However, for the reasons stated in my concurring

opinion in *State v. Garner*, 331 N.C. 491, 417 S.E.2d 502 (1992), I dissent from the Court's conclusion that the handgun was properly admitted into evidence under the inevitable discovery exception to the exclusionary rule.