STATE OF NORTH CAROLINA v. KENNETH WAYNE MAREADY

No. COA07-171

(Filed 15 January 2008)

## 1. Search and Seizure— investigatory stop—anonymous tipster—lack of reasonable suspicion—fruit of poisonous tree

Deputies did not have a reasonable suspicion of criminal activity to conduct an investigatory stop of a vehicle driven by defendant, and all evidence and the testimony derived from the stop and related to defendant leaving the stop must be suppressed as fruits of unlawful conduct by the deputies, where (1) a minivan driver told the deputies that they might want to stop defendant's car because he was driving erratically and was running through stoplights and stop signs; (2) the minivan driver cannot be classified as a citizen informant because she was not named or identified; (3) the confidential and reliable informant standard could not be used because there was no indication that the minivan driver had previously given accurate information, that her statement was against penal interest, or that there was any other indicia of reliability; (4) the anonymous tip standard must thus be applied, and the deputies' investigation did not corroborate the tip but actually discredited it in that they testified that they did not observe defendant driving in an erratic or illegal manner when they followed his car before stopping it; and (5) the informant's tip thus did not provide the deputies with reasonable suspicion necessary to stop defendant.

## 2. Evidence— prior crimes or bad acts—intent inferred from bare fact of prior convictions

Although the trial court did not err or commit plain error by admitting into evidence the bare fact of defendant's prior convictions and by instructing the jury that this evidence could be used to prove malice or intent as to the charge of second-degree murder, the trial court committed plain error and defendant is entitled to a new trial for the remaining charges including assault with a deadly weapon inflicting serious injury, felony fleeing/eluding arrest with a motor vehicle, double assault with a deadly weapon, driving while license revoked, and misdemeanor larceny, because: (1) the trial court's erroneous instruction allowed the jury to infer the intent requirement of these crimes from the bare fact of defendant's prior convictions; and (2) the error had a probable impact on the jury's verdicts of guilty.

### 3. Evidence— prior crimes or bad acts—remoteness in time— beyond sixteen years

The trial court committed plain error by admitting defendant's prior convictions including his entire driving record, based on remoteness in time, and defendant is entitled to a new trial on the charge of second-degree murder, because: (1) our Court of Appeals has previously held in *Miller*, 142 N.C. App. 435 (2001), that a defendant's prior driving convictions dating as far back as sixteen years could be used to establish defendant acted with malice when he hit decedent while driving under the influence of alcohol; (2) although defendant had four convictions for driving while impaired within the sixteen years prior to the date of the offenses in the present case, the trial court allowed introduction of several other convictions that were too remote in time; (3) the evidence was of a fundamental nature and had a probable impact on the jury's finding of guilt; and (4) the trial court allowed the foregoing evidence to establish malice for the charge of second-degree murder.

Judge TYSON dissenting.

Appeal by Defendant from judgments entered 24 April 2006 by Judge Abraham P. Jones in Superior Court, Durham County. Heard in the Court of Appeals 19 September 2007.

*Attorney General Roy Cooper, by Special Counsel Isaac T. Avery, III, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Daniel R. Pollitt, for Defendant-Appellant.*

McGEE, Judge.

Kenneth Wayne Maready (Defendant) was convicted of second-degree murder, assault with a deadly weapon inflicting serious injury, felony fleeing/eluding arrest with a motor vehicle, driving while impaired, two counts of assault with a deadly weapon, driving while license revoked, misdemeanor larceny, and reckless driving to endanger. The jury also found that Defendant had attained the status of habitual felon and found, as an aggravating factor, that "[D]efendant knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person[.]" The trial court sentenced Defendant to a term of 270 months to 333 months for second-degree

murder, 150 months to 189 months for assault with a deadly weapon inflicting serious injury, 150 months to 189 months for felony flee-ing/eluding arrest with a motor vehicle, 24 months for driving while impaired, 150 days for each count of assault with a deadly weapon, 120 days for driving while license revoked, 120 days for misdemeanor larceny, and 60 days for reckless driving to endanger.

Prior to trial, Defendant filed a motion to suppress. Defendant sought to suppress "all testimony by any State's witnesses as to the initial stop of . . . Defendant's vehicle based upon the lack of reason-able suspicion that . . . Defendant had committed a criminal offense."

At trial, Deputy Morial Whitaker (Deputy Whitaker) testified that he and Deputy Norman Perry (Deputy Perry) (collectively, the deputies) were on patrol on 12 February 2005. The deputies passed a minivan that was driving slowly and had its flashers illuminated. The deputies also saw a silver Honda Civic (the Honda) driving behind the minivan. The minivan stopped and the Honda also stopped. When the two vehicles stopped, an apparently intoxicated pedestrian, whom the deputies had been watching, got into the passenger side of the Honda. The Honda then pulled around the minivan and continued driving. Deputy Whitaker testified that Deputy Perry drove the patrol vehicle alongside the minivan and that Deputy Whitaker talked with the female driver of the minivan. Defendant objected to this testi-mony, and the trial court held a hearing outside the presence of the jury on Defendant's objection and motion to suppress.

Deputy Whitaker testified during the *voir dire* hearing that the female driver of the minivan pointed at the Honda and told the deputies that they might "want to stop [the Honda]. The driver is driv-ing erratic[ally], driving a little crazy, running through stoplights and stop signs." Deputy Whitaker testified that he and Deputy Perry then stopped the Honda for investigatory purposes. Deputy Whitaker tes-tified in further detail about the circumstances leading to the stop of the Honda. After Deputy Whitaker completed his *voir dire* testimony, the trial court overruled Defendant's objection. The trial court also entered a written order on 26 April 2006 denying Defendant's motion to suppress.

Deputy Whitaker continued his testimony before the jury. He testified that after the female driver of the minivan told the deputies that they might want to stop the Honda, the deputies caught up with the Honda, pulled behind it, and activated the blue lights of their patrol vehicle. The driver of the Honda pulled to the right side of

the road and stopped. The driver and the passenger got out of the Honda and started walking towards the deputies. The deputies ordered both of them to get back in the Honda, and they complied. The driver of the Honda, whom Deputy Whitaker later identified as Defendant, again got out of the Honda and started walking towards the deputies. The deputies ordered Defendant to get back in the Honda, and Defendant complied.

Deputy Whitaker testified that he approached the Honda and smelled a strong odor of alcohol, and that Defendant was "very lethargic, fumbling with his wallet to get his ID out." Deputy Whitaker asked Defendant if Defendant had been drinking, and Defendant replied "yes, I have been drinking." Deputy Whitaker then asked Defendant to step out of the Honda, but Defendant refused. The deputies then attempted to extract Defendant from the Honda, but Defendant said he was "not going back to the penitentiary," and put the Honda into gear and sped off.

Deputy Whitaker testified that he and Deputy Perry immediately ran back to their patrol vehicle and began following the Honda. Deputy Whitaker testified that as the deputies rounded a curve approximately .7 of a mile down the road, he "saw a lot of smoke and debris. [He] saw the Honda flipping continuously. [He] saw a red pickup truck also flipping at the same time." Deputy Whitaker saw the passenger of the Honda, who had been ejected, lying "face down" in the road.

Deputy Whitaker testified that he saw a little girl in the passenger seat of the red pickup truck, and a female, who appeared to be deceased, lying on the side of the road. Deputy Perry testified that he saw a woman standing beside another vehicle that had been involved in the wreck, and that the woman was "okay."

The State introduced, without objection, Exhibit 64, Defendant's certified driving record from the Division of Motor Vehicles. Kenneth Cassidy (Mr. Cassidy), an assistant supervisor with the Division of Motor Vehicles License and Theft Bureau, testified that the driving record showed Defendant had six prior convictions for driving while impaired. The State also introduced, over Defendant's objection, Exhibits 66 through 69, which were certified copies of court records of several of Defendant's prior convictions. Mr. Cassidy further testified that four of the six convictions listed in Exhibit 64 also appeared in Exhibits 66 through 69. Defendant appeals.

I.

[1] Defendant argues the trial court erred by denying his motion to suppress. Specifically, Defendant contends that a portion of finding of fact number eight was not supported by the evidence, and that the trial court erred by concluding that the deputies had reasonable suspicion to stop Defendant's vehicle.

> Our standard of review of an order granting or denying a motion to suppress is "strictly limited to determining whether the trial [court's] underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the [trial court's] ultimate conclusions of law."

*State v. Ortez*, 178 N.C. App. 236, 243-44, 631 S.E.2d 188, 194-95 (2006) (quoting *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)), *disc. review denied*, 361 N.C. 434, 649 S.E.2d 642 (2007). "However, the trial court's conclusions of law are fully reviewable on appeal. At a suppression hearing, conflicts in the evidence are to be resolved by the trial court. The trial court must make findings of fact resolving any material conflict in the evidence." *State v. McArn*, 159 N.C. App. 209, 212, 582 S.E.2d 371, 374 (2003) (citations omitted).

In the present case, the trial court made the following findings of fact related to Defendant's motion to suppress:

> 4. Deputy Whitaker testified that he, along with Deputy Norman Perry also with the Durham County Sheriff's Office, observed an intoxicated person walking along Sherron Road in Durham County around 3:00 p.m. on Saturday, February 12, 2005. These deputies observed this person stagger out to the roadway, at which time they pulled their vehicle out onto Sherron Road to investigate his status and to possibly assist him in getting out of the way of any oncoming traffic.

> 5. As they were approaching this intoxicated person, the deputies observed a minivan being driven at a slow pace in the opposite direction with its hazard lights on. Behind the minivan was a silver Honda Civic motor vehicle that stopped when it reached the location of the intoxicated person.

> 6. The deputies then saw the intoxicated person run across the roadway and get into the stopped Honda Civic.

STATE v. MAREADY

[188 N.C. App. 169 (2008)]

7. The deputies passed by these vehicles from the other direction in their marked patrol car and made a U-turn to come back to these vehicles from behind. As they approached the vehicles from behind, the Honda Civic passed the now stopped minivan and continued in the same direction on Sherron Road.

8. The deputies pulled up alongside the minivan with the activated hazard lights and the female driver of this vehicle started to wave at them. This female driver appeared to be distraught and told the deputies that they needed to check on the driver of the silver car that just passed her because he may be drunk and was driving crazy, including running stop signs and stop lights. This driver was also pointing in the direction of the silver Honda Civic just seen by the deputies.

9. The deputies went up Sherron Road and found the silver Honda Civic stopped at the stop light at the next major intersection, which was Highway 98, also known as Wake Forest Highway.

10. When the deputies caught up to the Honda Civic they activated their blue lights to conduct an investigative vehicle stop. At that moment the light at the intersection turned green and the Honda Civic proceeded through the intersection and stopped immediately on the other side of that intersection on what now becomes Patterson Road.

11. The Defendant was found to be driving this silver Honda Civic motor vehicle.

The trial court then concluded that the deputies had reasonable suspicion to stop Defendant's vehicle for investigatory purposes.

In finding of fact number eight, the trial court found that the female driver who waved the deputies over "told the deputies that they needed to check on the driver of the silver car that just passed her because he may be drunk[.]" However, Deputy Whitaker testified during the *voir dire* hearing that the female driver "didn't mention that the person . . . was impaired. She didn't say the person was impaired. She said the person was driving erratic[ally]." Accordingly, this finding of fact was not supported by competent evidence and should be disregarded.

We next inquire whether the remaining findings of fact support the trial court's conclusion that the deputies had reasonable suspi-

cion to stop Defendant's vehicle. Resolution of this issue depends upon the test to be applied to the information given by the female driver of the minivan. Defendant argues that the female driver of the minivan was an anonymous tipster while the State argues she was a citizen-informant. For the reasons that follow, we agree with Defendant. We further hold that pursuant to the rules related to an anonymous tipster, the information provided by the female driver of the minivan lacked sufficient indicia of reliability and was not corroborated by further police investigation.

"[B]efore the police can conduct a brief investigatory stop of a vehicle and detain its occupants without a warrant, the officer must have a reasonable suspicion of criminal activity." *McArn*, 159 N.C. App. at 212, 582 S.E.2d at 374. "The reasonable suspicion must arise from the officer's knowledge prior to the time of the stop." *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000). "In determining whether reasonable suspicion exists, a court must consider the totality of the circumstances." *McArn*, 159 N.C. App. at 213, 582 S.E.2d at 374.

Citing *State v. Eason*, 328 N.C. 409, 402 S.E.2d 809 (1991), the State argues that the female driver of the minivan was a citizen-informant, and that "[w]hen a citizen comes forward with a report of criminal activity, there is no need to subject the information to the same special scrutiny given information supplied by unidentified or 'confidential' informants."

However, *Eason* is clearly distinguishable from the present case. In *Eason*, the defendant argued that the statements of the informant in the search warrant affidavit did not possess "sufficient aspects of reliability and credibility to establish probable cause." *Id.* at 419, 402 S.E.2d at 813. Applying the totality of the circumstances test, our Supreme Court recognized that "the informant who provided the information for the search warrant was Doris T. Hoffman, a 'citizen-informant' whose name appeared in the search warrant affidavit." *Id.* at 419-20, 402 S.E.2d at 814. Our Supreme Court concluded that the fact that the citizen-informant was named and identified "provided the magistrate with enough information to permit him to determine that [Doris T.] Hoffman was reliable." *Id.* at 420, 402 S.E.2d at 814. Moreover, the affidavit stated that Doris T. Hoffman was the defendant's mother and that she gave detailed information that implicated the defendant in the crimes at issue. *Id.* Our Supreme Court held that "there was more than a 'substantial basis' for [the magistrate's] determination that probable cause existed." *Id.*

In the present case, the findings demonstrate that the only information the deputies knew about the female driver of the minivan was that she was "distraught." Moreover, Deputy Whitaker testified as follows:

Q  Now, did you get the name of the person in the van?

A  No, she immediately took off.

Q  Didn't get a phone number, didn't get a license number?

A  No.

Q  So you got no information to be able to assess this woman's—I assume this was a woman. I apologize.

A  It was a female.

. . .

Q  To assess her credibility to determine whether or not the information she was giving you was, in any way, shape, or form, accurate.

A  No, we didn't.

Because the female driver in the present case was not named or identified, she cannot be classified as a citizen-informant pursuant to *Eason*.

Moreover, we cannot apply the confidential and reliable informant standard to the female driver in the present case. In *Hughes*, our Supreme Court had to determine "whether the information received by the officers was obtained from an anonymous informant or a confidential and reliable informant." *Hughes*, 353 N.C. at 203, 539 S.E.2d at 628. Our Supreme Court first recognized that in applying the totality of the circumstances test, "the principles underlying *Aguilar* and *Spinelli*, mainly that evidence is needed to show indicia of reliability, [are] important components[.]" *Id.* at 204, 539 S.E.2d at 628. Pursuant to the *Aguilar-Spinelli* test,

[r]eliability could be established by showing that the informant had been used previously and had given reliable information, that the information given was against the informant's penal interest, that the informant demonstrated personal knowledge by giving clear and precise details in the tip, or that the informant was a member of a reliable group such as the clergy.

*Id.* at 203, 539 S.E.2d at 628. Our Supreme Court stated:

[T]he evidence shows that Detective Imhoff had never spoken with the informant and knew nothing about the informant other than Captain Matthews' claim that he was a confidential and reliable informant. There was no indication that the informant had been previously used and had given accurate information or that his statement was against his penal interest nor, as will be discussed later, was there any other indication of reliability.

*Id.* at 204, 539 S.E.2d at 628. The Court then concluded that "[w]ithout more than the evidence presented, we cannot say there was sufficient indicia of reliability to warrant use of the confidential and reliable informant standard. Accordingly, we analyze the anonymous tip standard in evaluating this case." *Id.* at 205, 539 S.E.2d at 629.

Likewise, in the present case, there is insufficient evidence of the reliability of the female driver of the minivan to warrant application of the confidential and reliable informant standard. As we recognized above, the female driver was not named or identified, and the deputies did not record her telephone number or license tag number. There is no indication that she had ever given any, much less reliable, information to police in the past, nor was her statement against her penal interest. Moreover, the reliability of the female driver, and the credibility of the information she supplied, was undermined by Deputy Whitaker's own knowledge that there were no stop lights, and few stop signs, in the immediate vicinity of the stopped minivan. Deputy Whitaker testified as follows:

Q Let's do stoplights first. Are there any stoplights along Sherron Road until it intersects with U.S. 70?

A No.

Q Are you aware of any stoplights down—if you take a right on Holder Road, heading south down Sherron, take a right on Holder, are there any stoplights down Holder Road?

A No.

Q So the only stop sign that you are aware of is the one at the intersection of Sherron Road and Holder Road?

A Stop sign, yes.

. . .

Q In fact, based on what you know of the neighborhood, there's no stoplights for a reasonable distance for that silver Honda to have run through; isn't that correct?

A  That's correct.

Q  Or, in that case, other than the stop sign at Holder Road and Sherron Road, you're not aware really of any stop signs that would have come off a major road, either Sherron or Holder Road.

A  There were several side streets where there are stop signs, but, no.

Based on the evidence presented, we hold there was insufficient "indicia of reliability to warrant use of the confidential and reliable informant standard. Accordingly, we analyze the anonymous tip standard in evaluating this case." *Hughes*, 353 N.C. at 205, 539 S.E.2d at 629.

"Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if [the] allegations turn out to be fabricated, 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.' " *Florida v. J.L.*, 529 U.S. 266, 270, 146 L. Ed. 2d 254, 260 (2000) (quoting *Alabama v. White*, 496 U.S. 325, 329, 110 L. Ed. 2d 301, 308 (1990)). "An anonymous tip may provide reasonable suspicion if it exhibits sufficient indicia of reliability and if it does not, then there must be sufficient police corroboration of the tip before the stop can be made." *McArn*, 159 N.C. App. at 213, 582 S.E.2d at 374.

In the present case, we have already held that the information provided by the female driver of the minivan was severely lacking in reliability. Therefore, we must determine whether the information was "buttressed by sufficient police corroboration." *Id.* However, rather than corroborating the information, police investigation actually discredited it. The trial court's findings reflect that after the deputies received the information, "[t]he deputies went up Sherron Road and found the silver Honda Civic stopped at the stop light at the next major intersection[.]" The findings ·further reflect that the deputies activated their blue lights and "[a]t that moment the light at the intersection turned green and the Honda Civic proceeded through the intersection and stopped immediately on the other side of that intersection[.]"

Deputy ·Whitaker's testimony also demonstrates that the deputies did not observe the Honda driving in an erratic or illegal manner. Prior to pulling up alongside the minivan, Deputy Whitaker observed the Honda driving slowly behind the ·minivan. The Honda was not

weaving or swerving and in response to the State's question: "[T]here was nothing in regard to the operation of the Honda that would have led you to believe that it was being driven by an impaired driver[,]" Deputy Whitaker replied, "Right." Deputy Whitaker further testified that after the minivan stopped, the driver of the Honda made a controlled maneuver around the minivan and kept driving. Again, in response to the State's question: "Nothing in that action would have indicated any sort of impairment[,]" Deputy Whitaker responded: "At that time, no." Deputy Whitaker also testified that after the deputies began following the Honda, they did not observe it being operated in a suspicious manner. In fact, Deputy Whitaker testified as follows:

> Q So you did not—again, separate and apart from [the female driver's] statement, [the Honda] did nothing that would constitute a reason that would have made you—constitute what we designate as reasonable suspicion that [the driver of the Honda] had been driving while impaired, that the driver was driving while impaired.

> A No, sir.

Based upon Deputy Whitaker's testimony, the sole source for any claimed reasonable suspicion came from the information provided by the female driver of the minivan. As we have already held, that information lacked both reliability and credibility. " 'The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.' " *Hughes*, 353 N.C. at 209, 539 S.E.2d at 632 (quoting *Florida*, 529 U.S. at 272, 146 L. Ed. 2d at 261). In the present case, although the information identified a determinate person, the driver of the Honda, the information was not reliable in its assertion of illegality. As we stated above, the female driver of the minivan was not identified and the information she provided was undermined by the knowledge of the deputies. Furthermore, the information was not corroborated by police investigation. Rather, the information was discredited by the investigation of the deputies. Accordingly, we hold that the deputies lacked reasonable suspicion to stop the Honda.

"When evidence is obtained as the result of illegal police conduct, not only should that evidence be suppressed, but all evidence that is the 'fruit' of that unlawful conduct should be suppressed." *State v. Pope*, 333 N.C. 106, 113-14, 423 S.E.2d 740, 744 (1992). In the present case, all evidence and testimony derived from the stop, and all evidence and testimony related to Defendant leaving the stop, should be

suppressed as fruits of the unlawful conduct. *See State v. Ivey*, 360 N.C. 562, 566, 633 S.E.2d 459, 462, *reh'g denied*, 360 N.C. 655, 636 S.E.2d 573 (2006) (holding: "Because the fruit of [the officer's] search of the vehicle arose from the illegal stop, all evidence seized during the search should have been excluded by the trial court, and it was therefore error to deny [the] defendant's motion to suppress."). Because this evidence was crucial to the State's theory of the case and bears on every crime with which Defendant was charged, Defendant is entitled to a new trial on all charges.

We next address the issues related to Defendant's prior convictions because they are likely to recur upon retrial. However, the errors raised by Defendant's remaining assignments of error are not likely to recur upon retrial and we do not address them.

II.

[2] Defendant argues the trial court erred or committed plain error by (1) admitting into evidence the bare fact of Defendant's prior convictions, and (2) by instructing the jury that this evidence could be used to prove malice or intent in all of the cases against Defendant. "Where evidence is admitted over objection, and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost." *State v. Whitley*, 311 N.C. 656, 661, 319 S.E.2d 584, 588 (1984).

At trial, Defendant objected when the State sought to introduce Exhibits 66 through 69, which were certified copies of court records of several of Defendant's prior convictions. However, the State had previously introduced, without objection, similar evidence, Exhibit 64, Defendant's certified driving record from the Division of Motor Vehicles. Mr. Cassidy had also previously testified, without objection, that pursuant to Exhibit 64, Defendant had six prior convictions for driving while impaired. Mr. Cassidy further testified that four of the six convictions listed in Exhibit 64 also appeared in Exhibits 66 through 69. Because the same evidence had previously been admitted into evidence without objection, Defendant waived his subsequent objection to Exhibits 66 through 69. *See Whitley*, 311 N.C. at 661, 319 S.E.2d at 588.

Because Defendant lost the benefit of his objection, we review the introduction of Defendant's prior convictions for plain error.

Plain error includes error that is a fundamental error, something so basic, so prejudicial, so lacking in its elements that justice can-

not have been done; or grave error that amounts to a denial of a fundamental right of the accused; or error that has resulted in a miscarriage of justice or in the denial to [the] appellant of a fair trial.

*State v. Gregory*, 342 N.C. 580, 586, 467 S.E.2d 28, 32 (1996) (citing *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)). "[I]n order to prevail under the plain error rule, [a] defendant must convince this Court that (1) there was error and (2) without this error, the jury would probably have reached a different verdict." *State v. Najewicz*, 112 N.C. App. 280, 294, 436 S.E.2d 132, 141 (1993), *disc. review denied*, 335 N.C. 563, 441 S.E.2d 130 (1994).

Defendant argues that pursuant to *State v. Wilkerson*, 148 N.C. App. 310, 559 S.E.2d 5, *rev'd per curiam for reasons stated in the dissent*, 356 N.C. 418, 571 S.E.2d 583 (2002), the trial court erred by admitting into evidence the bare fact of Defendant's prior convictions. In *Wilkerson*, our Supreme Court adopted Judge Wynn's dissent, in which Judge Wynn stated that the admission of the bare fact of a defendant's prior conviction violates Rule 404(b) and Rule 403. *Id.* at 327-28, 559 S.E.2d at 16. However, Judge Wynn stated that our Courts have recognized a categorical exception to this rule in second-degree murder cases where prior traffic-related convictions may be introduced to show malice. *Id.* Moreover, in *State v. Edwards*, 170 N.C. App. 381, 612 S.E.2d 394, *disc. review denied*, 359 N.C. 854, 619 S.E.2d 853 (2005), our Court recognized that "*Wilkerson* did not alter this Court's precedent involving traffic convictions in second degree murder cases." *Id.* at 386, 612 S.E.2d at 397.

In the present case, we hold that the trial court did not err by admitting the bare fact of Defendant's prior convictions as to the charge of second-degree murder because this evidence was admissible to show malice. *See id.*; *see also Wilkerson*, 148 N.C. App. at 327-28, 559 S.E.2d at 16. However, the bare fact of Defendant's prior convictions was not admissible to show intent as to the other crimes with which Defendant was charged. *See Wilkerson*, 148 N.C. App. at 327-28, 559 S.E.2d at 16. Nevertheless, the trial court instructed the jury as follows:

Now, evidence has been received tending to show that . . . [D]efendant previously, prior to this case, had been convicted of Driving While Impaired.

This evidence was received solely for the purpose of showing that . . . [D]efendant had the requisite malice or intent which is a

necessary element of crimes charged in this case. If you believe this evidence, you may consider it but only for the limited purpose for which it has been received.

Defendant did not object to this instruction.

Defendant now argues the trial court committed plain error by instructing the jury that Defendant's prior convictions could be used to prove intent in all of the cases. Clearly, this instruction was erroneous because Defendant's prior convictions were not admissible to establish the intent element of the other crimes with which Defendant was charged.

We also hold that this error amounted to plain error. In *Wilkerson*, the dissent, which was adopted by our Supreme Court, recognized that

> introducing the bare fact of a prior conviction under Rule 404(b) fails to satisfy the Rule 403 balancing test, as the only fair interpretation of the purpose behind the State's introduction of such evidence is impermissible: that the evidence is being offered to show the defendant's predisposition to commit the crime charged.

*Id.* at 328, 559 S.E.2d at 16. The dissent further recognized that the admission of the bare fact of a prior conviction is prejudicial:

> Because the jury was permitted to infer [the] defendant's intent to sell or deliver the cocaine from the bare fact of his prior convictions, I cannot say that the introduction of those prior convictions was harmless error as to his current conviction for possession with intent to sell or deliver cocaine. Furthermore, as the jury was allowed to infer from his prior convictions [the] defendant's knowledge of his possession of the cocaine, as well as his intent to control the cocaine, I cannot say that introduction of those convictions was harmless error as to his conviction for trafficking in cocaine. The defense was inescapably tainted and unfairly prejudiced by the admission of [the] defendant's prior convictions, despite (or indeed as a result of) the independent evidence of [the] defendant's knowledge and intent elicited from Officer Pyrtle and Agent Long.

*Id.* at 328-29, 559 S.E.2d at 16-17 (citations omitted).

In the present case, in addition to second-degree murder, Defendant was also charged with, and convicted of, the following

crimes: assault with a deadly weapon inflicting serious injury, felony fleeing/eluding arrest with a motor vehicle, driving while impaired, two counts of assault with a deadly weapon, driving while license revoked, misdemeanor larceny, and reckless driving to endanger. Defendant argues that each of these crimes contains an intent element. Therefore, Defendant argues the trial court's instruction amounted to plain error because the instruction allowed the jury to use the prior convictions to establish the intent element of each of these crimes.

We disagree with Defendant that each of the crimes with which Defendant was charged contains an intent element. However, intent is an element in several of them. The trial court instructed the jury that to find Defendant guilty of assault with a deadly weapon inflicting serious injury, the jury must find, *inter alia*, that "[D]efendant assaulted [the passenger in the Honda] by intentionally and without justification or excuse, by using a 1997 Honda Civic, caused an auto collision in which [the passenger of the Honda] sustained blunt force trauma to his head and body[.]" As to the charge of fleeing/eluding arrest with a motor vehicle, the trial court instructed the jury that it must find, *inter alia*, that Defendant acted "with a purpose of getting away in order to avoid arrest or apprehension by the officer." Our Court has recognized that a defendant accused of fleeing/eluding arrest with a motor vehicle "must actually intend to operate a motor vehicle in order to elude law enforcement officers," even though there is no intent requirement for the aggravating factors necessary to raise the offense to a felony. *State v. Woodard*, 146 N.C. App. 75, 80, 552 S.E.2d 650, 654 (2001), *disc. review improvidently allowed*, 355 N.C. 489, 562 S.E.2d 420 (2002). As to the charges of assault with a deadly weapon, the trial court instructed the jury that to find Defendant guilty, it must find, *inter alia*, that "[D]efendant assaulted the victims . . . intentionally and without justification or excuse [by] . . . striking the vehicle that [one of the victims] was driving, and . . . by striking the vehicle in which [another victim] was a passenger[.]" Finally, the trial court instructed the jury that to find Defendant guilty of the charge of misdemeanor larceny, the jury would have to find, *inter alia*, that Defendant took property "intending at the time to deprive the victim of its use permanently[.]"

Because the trial court's erroneous instruction allowed the jury to infer the intent requirement of these crimes from the bare fact of Defendant's prior convictions, we hold that the trial court's error had a probable impact on the jury's verdicts of guilty. *See Najewicz*, 112

N.C. App. at 294, 436 S.E.2d at 141. Accordingly, independent of our holding in Section I of this opinion, we hold that Defendant is entitled to a new trial on the charges of assault with a deadly weapon inflicting serious injury, felony fleeing/eluding arrest with a motor vehicle, two counts of assault with a deadly weapon, and misdemeanor larceny.

## III.

[3] Defendant also argues the trial court committed plain error by admitting Defendant's prior convictions because many of the convictions were too remote in time. In *State v. Goodman*, 149 N.C. App. 57, 560 S.E.2d 196 (2002), *rev'd in part per curiam for reasons stated in the dissent*, 357 N.C. 43, 577 S.E.2d 619 (2003), the defendant argued that the trial court committed plain error by admitting his entire driving record. *Id.* at 66-67, 560 S.E.2d at 202-03. Specifically, the defendant argued the trial court violated Rule 404(b) because many of the previous convictions were too remote in time. *Id.* at 66-68, 560 S.E.2d at 202-03.

In *Goodman*, the majority recognized that in *State v. Miller*, 142 N.C. App. 435, 543 S.E.2d 201 (2001), this Court held that "the defendant's prior driving convictions dating as far back as sixteen years could be used to establish the defendant acted with malice when he hit the decedent while driving under the influence of alcohol." *Goodman*, 149 N.C. App. at 61, 560 S.E.2d at 199 (citing *Miller*, 142 N.C. App. at 439, 543 S.E.2d at 204). The majority in *Goodman* held that the trial court erred by admitting the defendant's entire driving record, which stretched back thirty-seven years, because some of the convictions were too remote in time and were not probative of the defendant's malice in the crime charged. *Id.* at 68, 560 S.E.2d at 203. However, the majority stated that "in light of [the] defendant's numerous convictions, including four convictions for driving while intoxicated or impaired which occurred within the approximate time-frame held to be permissible in *Miller*, we hold admission of the entire record did not prejudice [the] defendant to the extent required under a plain error analysis." *Id.*

The dissent stated as follows:

In this case, the admission of [the] defendant's driving record dating back to 1962 (some 37 years) violates the temporal proximity requirement of Rule 404(b) and thus constitutes error. Although [the] defendant has six prior driving while impaired convictions dating back to 1962, only one of those occurred in the sixteen

years prior to the crime at issue and none within the eight years prior to the crime at issue. Furthermore, [the] defendant's driving record contained convictions older than sixteen years of reckless driving, driving while license suspended, hit and run with property damage, unsafe moving violations, speeding, driving too fast for conditions, and driving on the wrong side of the road.

*Id.* at 73, 560 S.E.2d at 206 (footnote omitted). The dissent also noted: "Although I am bound by this Court's holding in *State v. Miller,* . . . that driving convictions dating back sixteen years are admissible to prove malice, any conviction dating beyond sixteen years, however slight, runs afoul of the temporal proximity requirement of Rule 404(b)." *Id.* at 73 n.1, 560 S.E.2d at 206 n.1. The dissent further stated that the error was "of a fundamental nature and . . . had a 'probable impact on the jury's finding of guilt' and thus constitute[d] plain error." *Id.* at 73, 560 S.E.2d at 206 (quoting *Odom,* 307 N.C. at 661, 300 S.E.2d at 379). Adopting the dissent, our Supreme Court reversed the majority decision of our Court. *Goodman,* 357 N.C. at 43, 577 S.E.2d at 619.

In the present case, although Defendant had four convictions for driving while impaired within the sixteen years prior to the date of the offenses in the present case, the trial court allowed the introduction of several other convictions that were too remote in time. Specifically, the trial court allowed the State to introduce evidence that Defendant was convicted of driving with no operator's license on 4 November 1988, on 20 October 1986, and on 12 February 1986. The trial court also allowed evidence that Defendant was convicted of failing to reduce speed on 26 June 1985, and of larceny of a motor vehicle and of driving while license revoked on 29 October 1981. The trial court further allowed evidence that Defendant was convicted of driving while intoxicated on 29 October 1981 and on 11 August 1980.

Because these convictions occurred beyond the sixteen-year time frame held permissible in *Miller,* we hold that the introduction of these convictions "[ran] afoul of the temporal proximity requirement of Rule 404(b)." *Goodman,* 149 N.C. App. at 73 n.1, 560 S.E.2d at 206 n.1. As in *Goodman,* we hold that the error in the present case was "of a fundamental nature and . . . had a 'probable impact on the jury's finding of guilt' and thus constitute[d] plain error." *Id.* at 73, 560 S.E.2d at 206 (quoting *Odom,* 307 N.C. at 661, 300 S.E.2d at 379). Therefore, independent of our holding in Section I of this opinion, we hold that Defendant is entitled to a new trial on the charge of second-

degree murder because the trial court allowed the foregoing evidence to establish malice. *See id.*

Reversed and remanded for a new trial.

Judge ELMORE concurs.

Judge TYSON dissents with a separate opinion.

TYSON, Judge dissenting.

The majority's opinion awards defendant a new trial on three alternative grounds: (1) the trial court's denial of defendant's motion to suppress; (2) the trial court's admittance of defendant's prior convictions and its jury instruction, stating this evidence could be used to prove malice or intent in all the charges against defendant; and (3) the trial court's admittance of defendant's entire driving record containing prior convictions dating beyond sixteen years. I find no prejudicial error and respectfully dissent.

### I.  Motion to Suppress

Defendant argues the trial court erred by denying defendant's motion to suppress. I disagree.

### A.  Standard of Review

Review of a trial court's denial of a motion to suppress is limited to a determination whether the trial court's findings of fact are supported by competent evidence and whether those findings support the trial court's ultimate conclusions of law. The trial court's findings are conclusive if supported by competent evidence, even if the evidence is conflicting.

*State v. Sutton*, 167 N.C. App. 242, 244, 605 S.E.2d 483, 484-85 (2004) (internal citations omitted), *disc. rev. denied*, 359 N.C. 326, 611 S.E.2d 847 (2005).

### B.  Analysis

Defendant only assigns error to findings of fact numbered five and eight contained in the trial court's order denying defendant's motion to suppress. Defendant failed to present any argument pertaining to finding of fact numbered five. This portion of defendant's assignment of error is abandoned pursuant to N.C.R. App. P. 28(b)(6) (2008).

The majority's opinion correctly holds that the portion of finding of fact numbered eight that states, "may be drunk" is not supported by competent evidence. Despite this error, defendant has failed to show any prejudice. The remaining portion of finding of fact numbered eight is clearly supported by competent evidence, is conclusive and binding upon this Court.

Defendant argues the trial court's findings of fact do not support its only conclusion of law: "[based] on the foregoing findings of fact, the Court concludes as a matter of law that considering *the totality of the circumstances* these deputies had a reasonable suspicion to stop the [d]efendant's vehicle for investigative purposes." (Emphasis supplied). I disagree.

Our Supreme Court has held:

Only unreasonable investigatory stops are unconstitutional. An investigatory stop must be justified by a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity. *A court must consider the totality of the circumstances—the whole picture in determining whether a reasonable suspicion to make an investigatory stop exists.* The stop must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training. *The only requirement is a minimal level of objective justification, something more than an unparticularized suspicion or hunch.*

*State v. Campbell*, 359 N.C. 644, 664, 617 S.E.2d 1, 14 (2005) (emphasis supplied) (internal citations and quotations omitted). Defendant and the majority's opinion assert that the sole source for any claimed reasonable suspicion resulted from information provided by an anonymous driver, who without being identified lacked reliability and credibility. I disagree.

Here, the investigatory stop was not based solely on the anonymous driver's information, but also on Deputies Whitaker and Perry's personal observations. The State presented evidence that tended to show Deputies Whitaker and Perry had observed: (1) an intoxicated subject walking along the side of Sherron Road; (2) a tan minivan with its "flashers" activated traveling at a very slow speed; (3) a silver Honda following the minivan "almost bumper to bumper;" (4) the minivan and Honda both completely stop in the middle of the road;

(5) the intoxicated subject run from across the road and enter the passenger side of the Honda; (6) the Honda drive around the minivan; (7) the minivan pull over to the side of the road; and (8) a "distraught" female in the driver's seat of the minivan motioning for the deputies to stop.

Further, Deputy Whitaker testified that while he was watching the intoxicated subject walk along Sherron Road, he made "a phone call to a deputy who had a prior call and asked him what was the description of the subjects that he had dealt with earlier." Deputy Whitaker testified "we had the suspicion that it was possibly one of the two subjects that they had dealt with earlier," due to the temporal and geographical proximity of the two incidents.

Deputy Whitaker's testimony referred to an incident which had occurred less than one hour earlier. At approximately 2:05 p.m., Deputies Brian O'Briant and John Hammond received a call to check on two subjects located at Highway 98 and Sherron Road. The deputies responded to the call and found defendant and another man walking along the shoulder of Holder Road intoxicated. The deputies asked the men for identification and checked for outstanding warrants. The deputies determined the men appeared to be at their final destination and cleared the call at 2:32 p.m., approximately thirty minutes prior to when Deputies Whitaker and Perry observed an intoxicated subject walking along Sherron Road.

I agree with the trial court and would hold these "specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of . . . reasonable, cautious officer[s], guided by [their] experience and training" are sufficient to establish a reasonable suspicion that defendant was involved in criminal activity based on the totality of the circumstances. *Id.* It is unnecessary for this Court to determine whether the unidentified driver of the tan minivan was an "anonymous informant" or a "citizen informant." The trial court's findings of fact support its ultimate conclusion of law that under the totality of the circumstances, Deputies Whitaker and Perry had reasonable suspicion to initiate an investigatory stop of defendant's vehicle. *Id.* The trial court properly denied defendant's motion to suppress.

## II. Prior Convictions

Defendant argues the trial court committed plain error by admitting into evidence the "bare fact" of defendant's prior convictions

and instructing the jury that this evidence could be used to prove malice or intent in all of the charges against defendant. Defendant also argues the trial court committed plain error by admitting some of defendant's prior convictions that were too remote in time. I disagree.

## A. Standard of Review

In the absence of any objection, we review defendant's assignments of error under plain error analysis:

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has "resulted in a miscarriage of justice or in the denial to appellant of a fair trial" or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (emphasis original) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982)). Our Supreme Court has stated that "plain error analysis applies only to instructions to the jury and evidentiary matters." *State v. Greene*, 351 N.C. 562, 566, 528 S.E.2d 575, 578, *cert. denied*, 531 U.S. 1041, 148 L. Ed. 2d 543 (2002).

## B. Jury Instruction

In its charge to the jury, the trial court stated:

> Now, evidence has been received tending to show that the defendant previously, prior to this case, had been convicted of Driving While Impaired.

> This evidence was received solely for the purpose of showing that the defendant had the requisite malice or intent which is a necessary element *of crimes charged* in this case. If you believe this evidence, you may consider it but only for the limited purpose for which it has been received.

(Emphasis supplied). The majority's opinion correctly states, "that the trial court did not err by admitting the bare fact of [d]efend-

ant's prior convictions as to the charge of second-degree murder because this evidence is admissible to show malice." *See State v. Wilkerson*, 148 N.C. App. 310, 327-28, 559 S.E.2d 5, 16 (Wynn, J., dissenting) (acknowledging multiple precedents allowing the bare fact of defendant's prior traffic-related convictions as admissible to prove malice in second-degree murder cases), *rev'd*, 356 N.C. 418, 571 S.E.2d 583 (2002) (reversing *per curiam* for reasons stated in the dissenting opinion); *see also State v. Rich*, 351 N.C. 386, 527 S.E.2d 299 (2000).

However, the majority's opinion ultimately holds the trial court committed both plain and prejudicial error and awards defendant a new trial on the charges of assault with a deadly weapon inflicting serious injury, felony fleeing/eluding arrest with a motor vehicle, two counts of assault with a deadly weapon, and misdemeanor larceny. The majority's opinion bases its holding on the trial court's instruction allowing the jury to use the "bare fact" of defendant's prior convictions to establish the intent element in the crimes with which defendant was charged. *Id.* I disagree.

"In deciding whether a defect in the jury instruction constitutes plain error, the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *Odom*, 307 N.C. at 661, 300 S.E.2d 378-79 (citation and quotation omitted). Our Supreme Court has stated, "when the plain error rule is applied, it is *the rare case* in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Id.* at 660-61, 300 S.E.2d 378 (citation and quotation omitted) (emphasis supplied).

After a thorough review of the record, the State presented other overwhelming evidence sufficient to establish each element of intent for the charges of: (1) assault with a deadly weapon inflicting serious injury; (2) felony fleeing/eluding arrest with a motor vehicle; (3) two counts of assault with a deadly weapon; and (4) misdemeanor larceny. Defendant has failed to demonstrate how the trial court's instructional error had "a probable impact on the jury's finding that the defendant was guilty" of the crimes charged such that defendant should be awarded a new trial under plain error review. *Id.* at 660, 300 S.E.2d 378. Without a showing of prejudice, these facts do not elevate defendant's convictions to the "rare case" to award defendant a new trial. *Id.*

### C. Temporal Proximity

Defendant also argues the trial court committed plain error by admitting defendant's entire driving record into evidence because some of his prior convictions were "too remote in time." I disagree.

In *State v. Miller*, this Court unanimously held that driving convictions occurring sixteen years prior to the current charges were admissible to prove malice in second-degree murder cases. 142 N.C. App. 435, 440, 543 S.E.2d 201, 205 (2001). *See also Rich*, 351 N.C. at 400, 527 S.E.2d at 307 (upholding admission of a nine-year-old speeding conviction to show malice). In *State v. Goodman*, a majority of this Court held that it was not plain error to admit a driving record that contained convictions dating back thirty-seven years. 149 N.C. App. 57, 70, 560 S.E.2d 196, 205 (2002). Judge Greene dissented and asserted the admission of defendant's entire thirty-seven year driving record violated the temporal proximity requirement of Rule 404(b) and constituted error. *Id.* at 73, 560 S.E.2d at 206. As the basis of his holding, Judge Greene stated:

> Although defendant has six prior driving while impaired convictions dating back to 1962, *only one of those occurred in the sixteen years prior to the crime at issue and none within the eight years prior to the crime at issue.* Furthermore, defendant's driving record contained convictions older than sixteen years of reckless driving, driving while license suspended, hit and run with property damage, unsafe moving violations, speeding, driving too fast for conditions, and driving on the wrong side of the road. This error is of a fundamental nature and, in my opinion, had a "probable impact on the jury's finding of guilt" and thus constitutes plain error. *State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 379 (1983). From the record, it appears *the jury had difficulty in determining whether defendant had acted with malice because during its deliberations, the jury requested to have the definition of malice read twice. The jury later requested the trial court permit it to have a written definition of malice along with defendant's driving record to consider during its deliberations.* Accordingly, I would grant defendant a new trial.

*Id.* (emphasis supplied). On appeal, our Supreme Court *per curiam* reversed the majority for the reasons stated in Judge Greene's dissenting opinion. *State v. Goodman*, 357 N.C. 43, 577 S.E.2d 619 (2003).

Here, the facts before us are clearly distinguishable from the facts presented in *Goodman*. 149 N.C. App. at 59-61, 560 S.E.2d at 198-99. Defendant's record showed six prior driving while impaired convictions. Four of the six prior driving while impaired convictions occurred well within the sixteen year time-frame this Court articulated in *Miller*. 142 N.C. App. at 440, 543 S.E.2d at 205. Defendant's most recent driving while impaired conviction occurred on 27 August 2004, only six months prior to the occurrence of the crimes charged in this case. Also, unlike *Goodman*, nothing in the record shows "the jury had difficulty in determining whether defendant had acted with malice." *Goodman*, 149 N.C. App. at 73, 560 S.E.2d at 206.

Defendant states in his brief, "[t]he driving record showed the bare fact defendant had 36 prior criminal convictions, 44 prior DMV administrative driver license suspensions, 3 prior civil license revocations, and 6 prior accidents."

Without articulating any prejudice to defendant and under plain error review, the majority awards defendant a new trial because the trial court admitted evidence of eight prior convictions that were dated beyond the sixteen year time-frame: (1) driving with no operator's license on 4 November 1988, 20 October 1986, and 12 February 1986; (2) failing to reduce speed on 26 June 1985; (3) larceny of a motor vehicle and driving while licensed revoked on 29 October 1981; and (4) driving while impaired on 29 October 1981 and 11 August 1980. Defendant has wholly failed to show any prejudice or demonstrate how this unobjected to plain error was "of a fundamental nature and . . . had a 'probable impact on the jury's finding of guilt.' " *Goodman*, 149 N.C. App. at 73, 560 S.E.2d at 206 (quoting *Odom*, 307 N.C. at 661, 300 S.E.2d at 379).

### III.  Conclusion

Under the totality of the circumstances, the trial court's findings of fact support its conclusion that Deputies Whitaker and Perry had a reasonable suspicion to initiate an investigatory stop of defendant's vehicle. The trial court properly denied defendant's motion to suppress.

Defendant failed to object and has failed to show any prejudice from the trial court's admittance of defendant's prior convictions under plain error review. Defendant is not entitled to a new trial on any grounds articulated in the majority's opinion. I vote that defendant has made no showing of prejudicial error occurred and respectfully dissent.